1       IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF IOWA
2

3  UNITED STATES OF AMERICA,      )
                                  )
4                  Plaintiff,     )
                                  )
5       VS.                       )     CR 16-81
                                  )
6  MICHAEL BORDMAN,               )     *Redacted Transcript*
                                  )
7                  Defendant.     )

8

9                        APPEARANCES:

10  ATTORNEY MARK A. TREMMEL, Assistant U.S. Attorney, 111
    Seventh Avenue S.E., Box 1, Cedar Rapids, Iowa 52401,
11  appeared on behalf of the United States.

12  ATTORNEY JILL M. JOHNSTON, of the Federal Public
    Defender's Office, 222 Third Avenue S.E., Suite 290,
13  Cedar Rapids, Iowa 52401, appeared on behalf of the
    Defendant.

14

15                   SENTENCING HEARING,

16         HELD BEFORE THE HON. LINDA R. READE,

17  on the 12th day of June, 2017, at 111 Seventh Avenue

18  S.E., Cedar Rapids, Iowa, commencing at 9:57 a.m., and

19  reported by Patrice A. Murray, Certified Shorthand

20  Reporter, using machine shorthand.

21  Transcript Ordered: 6/19/17
    Transcript Completed: 7/10/17
22

23              Patrice A. Murray, CSR, RPR, RMR, FCRR
                     United States District Court
24                111 Seventh Avenue S.E., Box 4
                   Cedar Rapids, Iowa 52401-2101
25                        (319) 286-2338

***Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov***
to purchase a complete copy of the transcript.
Case 1:16-cr-00081-LRR-CJW Document 65 Filed 07/14/17 Page 1 of 52

```
                          INDEX

WITNESS              D          C          RD         RC

Joshua Bell          11         21



                        EXHIBITS

                                           O          R

Exhibit No. 1------------------------------ 9          9

Exhibit No. 2------------------------------ 9          9

Exhibit No. 3------------------------------ 9          9
```

 1        (The following proceedings were held in open court.)

 2              THE CLERK:  In Criminal Matter Number

 3    16-CR-81-1, United States versus Michael Bordman, the

 4    defendant is present, on for sentencing.  Representing

 5    the United States Probation Office is Officer Pat Korth

 6    telephonically.

 7        Counsel, please make your appearances for the

 8    record.

 9              MR. TREMMEL:  Mark Tremmel, US Attorney's

10    Office.

11              MS. JOHNSTON:  Jill Johnston on behalf of

12    Mr. Bordman.

13              THE COURT:  And Mr. Bordman is personally

14    present.

15        Mr. Bordman, do you recall being in court on

16    December 22, 2016, and pleading guilty to two federal

17    crimes?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Under Count 1, you pled guilty to

20    sexual exploitation of a child.  This is a class B

21    felony.  It's -- the sentencing provisions under the

22    statute, a minimum of 15 years in prison and up to

23    30 years in prison, followed by a supervised release term

24    of 5 years to life.  Probation is not possible.  The

25    fine, up to $250,000.  Restitution can be awarded.

Case 1:16-cr-00081-LRR  Document 65  Filed 07/11/17  Page 3 of 52
to purchase a complete copy of the transcript.

1  Special assessment, $100.

2      Under Count 4, you pled guilty to possession of

3  child pornography, including a depiction involving a

4  prepubescent minor or a minor who had not yet attained

5  12 years of age.  The penalty for this offense can be a

6  prison term as long as 20 years.  The Court can run these

7  prison terms on Count 1 and Count 4 either concurrently

8  or consecutively, so your maximum exposure were the Court

9  to run them consecutively would be 50 years.  Supervised

10 release, Count 4, 5 years to life.  Probation, not

11 available because of the mandatory minimum on Count 1.

12 The fine, up to $250,000.  Restitution, of course, can be

13 awarded.  Special assessment, $100.

14      Do you remember your attorney going through these

15 provisions with you prior to the time you appeared in

16 court and gave your plea of guilty?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And do you understand that you are

19 in court today for the purpose of being sentenced on your

20 pleas of guilty to Count 1 and Count 4?

21           THE DEFENDANT:  Yes.

22           THE COURT:  And is your plea still guilty to

23 both of those counts?

24           THE DEFENDANT:  Yes.

25           THE COURT:  The Court has received and read the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR Document 65 Filed 07/11/17 Page 4 of 52
to purchase a complete copy of the transcript.

1   presentence investigation report, Document 39 in the

2   records of the court, current as of April the 12th, 2017.

3       The parties have done briefing on some of the

4   issues.  The attorneys, I know, have exhibits that

5   they're going to want to offer.  Attached as an appendix

6   to the presentence investigation report are pieces of

7   information concerning the victims identified by the

8   National Center for Missing and Exploited Children, and

9   the Court, of course, has read those.  There is also a

10   potential for a $5,000 special assessment on each count

11   of conviction under the statute.

12       Mr. Tremmel, have you had the opportunity to go

13   through this report?

14        MR. TREMMEL:  Your Honor, we have received and

15   reviewed the presentence report.  We have no objections

16   or corrections.  Regarding the $5,000 special assessment,

17   we would agree that the defendant is indigent.

18        THE COURT:  All right.  Ms. Johnston, have you

19   and Mr. Bordman been through the presentence

20   investigation report?

21        MS. JOHNSTON:  We have, Your Honor.

22        THE COURT:  Will you make a brief record,

23   please, as to how you went about doing that.

24        MS. JOHNSTON:  I sent both copies of the

25   presentence report to Mr. Bordman and we met in person to

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:16-cr-00081-LRR-CJW Document 65 Filed 07/24/17 Page 5 of 52

go through them.  After reviewing the report, we have no objection to the calculation of the guideline range.

THE COURT:  Mr. Bordman, do you remember receiving a copy of the presentence investigation report to read?

THE DEFENDANT:  Yes.

THE COURT:  Did you read it?

THE DEFENDANT:  Yes.

THE COURT:  I see that you have a high school diploma, so I am making the assumption that when you read this report, you were able to understand what you were reading.  Is that fair?

THE DEFENDANT:  Yes.

THE COURT:  Have you had as much time as you wanted to to talk to your attorney about the contents of the report and any concerns that you have?

THE DEFENDANT:  Yes.

THE COURT:  The Court accepts the computation of the advisory guideline sentence, Page 12 of the report.  The first group is the Group 1, sexual exploitation of a child, Paragraph 27.  The base offense level is 32.

4 levels are added because one of the -- one or more of the minors involved had not attained the age of 12 years.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR   Document 65   Filed 07/11/17   Page 6 of 52
to purchase a complete copy of the transcript.

1    2 levels are added because of the commission of a

2 sex act or sexual contact with one of these children.

3    2 levels are added because defendant knowingly

4 engaged in distribution of child pornography.

5    4 levels are added because the material portrayed

6 sadistic or masochistic conduct or other depictions of

7 violence, or an infant or toddler.  And both of those

8 would apply in this case.

9    2 levels are added if the defendant was a parent,

10 relative, or legal guardian of the minor involved in the

11 offense, or if the minor was otherwise in the custody,

12 care, or supervisory control of the defendant.  And that

13 scores 2.

14    That gives us an adjusted offense level of 46.  The

15 Chapter 4 enhancements at Paragraph 37 take him up to a

16 level 51.  The Court conditionally grants acceptance of

17 responsibility and subtracts 2.  The Court will await the

18 end of the hearing to decide if I really am going to give

19 acceptance of responsibility.

20    I'll ask Mr. Tremmel, let's assume that I do grant

21 the 2 levels off.  Will the government be moving for 1

22 level off for additional acceptance?

23         MR. TREMMEL:  Yes, Your Honor, the government

24 will move for the third level in that case.

25         THE COURT:  All right.  And so potentially that

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:16-cr-00081-LRR   Document 65   Filed 07/14/17   Page 7 of 52

would be added.  3 levels off of 51 results in an offense level of 48.  The advisory guidelines sentencing table only goes to offense level 43, which is a life sentence all the way across regardless of criminal history.  So when that happens, and it's a rare instance, then the offense level goes down to the top level on the sentencing table, which is 43.  Mr. Bordman is criminal history category I.  So under the guidelines, he would have a life sentence, absent the statutory maximum sentence, which is 50 years.  Supervised release, 5 years to life on each count of conviction.  Probation is not available.  The fine, 50,000 to $500,000.  Restitution. $200 special assessment.

It's my understanding that Mr. Bordman does not agree that he should pay restitution in the amount suggested by the United States.  Is that still his position?

MS. JOHNSTON:  Yes, Your Honor.  We're not disputing that the Court, of course, can impose restitution.  We're just asking that you not impose restitution in the amount requested by the government.

THE COURT:  All right.  Then restitution, of course, is the burden of the United States; so, Mr. Tremmel, may I hear from you on the restitution issue first.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR   Document 65   Filed 07/11/17   Page 8 of 52
*to purchase a complete copy of the transcript.*

```
 1          MR. TREMMEL:  Your Honor, we have three

 2   exhibits, which have previously been filed.  Exhibits 1

 3   and 3 are with the Court right now.  I have Exhibit 2

 4   here because I'm going to show the officer, Investigator

 5   Bell, that briefly.  But we would offer Exhibits 1, 2,

 6   and 3 at this time under seal.

 7          THE COURT:  Any objection?

 8          MS. JOHNSTON:  No objection.

 9          THE COURT:  They are received.

10       (Whereupon, Exhibits 1, 2, and 3 were received.)

11          MR. TREMMEL:  Your Honor, in addition to that,

12   we have a brief stipulation.  Exhibit No. 3 lists prior

13   defendants who have been ordered to pay restitution to

14   the victim or victims in this series.  It lists 31

15   defendants.  There's an additional defendant last week,

16   and instead of preparing another exhibit, we're

17   agreeing -- the parties are agreeing just to make a

18   stipulation, if -- I'll proceed whenever it's convenient

19   for the Court.

20          THE COURT:  All right.  And any objection to

21   that?

22          MS. JOHNSTON:  No, Your Honor.

23          THE COURT:  All right.

24          MR. TREMMEL:  Your Honor, on June 7, 2017, in

25   United States versus Ronald Ilich, I-L-I-C-H, Case Number
```

1  CR 16-44, in the Western District of Pennsylvania, where

2  the defendant was sentenced for possession of child

3  pornography, the District Court ordered the defendant to

4  pay $6,000 combined to the three represented victims in

5  the Sweet Sugar case.

6          THE COURT:  All right.

7          MR. TREMMEL:  And that's the stipulation, Your

8  Honor.  And I would note for the Court that the math on

9  Page 13 of the government's memo would be adjusted.

10 Previously, there were 31 defendants, plus this

11 defendant.  Now it would be 32, plus this defendant is

12 33.  And so if you take $95,295.71 and you divide by 33,

13 the resulting number is $2,887.75.  So this does not

14 change the government's recommendation in this case, but

15 it does change the calculation on Page 13 of the memo.

16         THE COURT:  And it's still the government's

17 position that defendant should pay $3,000 in restitution

18 to the victim identified as Pia.

19         MR. TREMMEL:  That is correct, Your Honor.

20         THE COURT:  All right.  Anything else you want

21 to say about your request?

22         MR. TREMMEL:  The government has one witness.

23         THE COURT:  All right.  You may proceed.

24         MR. TREMMEL:  Call Joshua Bell.

25         THE COURT:  Good morning, sir.  Will you please

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*Computer-Generated Copy of the Transcript*
Case 1:16-cr-00081-LRR-CJW   Document 65   Filed 07/11/17   Page 10 of 52

1  come forward and take the oath.

2                          JOSHUA BELL,

3  called as a witness, being first duly sworn or affirmed,

4  was examined and testified as follows:

5          THE CLERK:  Please take the stand, Officer.

6                      DIRECT EXAMINATION

7  BY MR. TREMMEL:

8  Q.    Could you please state your name and spell your last

9  name?

10  A.    Joshua Bell.  B, as in boy, E-L-L.

11  Q.    Where are you employed?

12  A.    Cedar Rapids Police Department.

13  Q.    And can you briefly describe your training and

14  experience?

15  A.    I graduated from the Cedar Rapids Police Academy in

16  2002.  In 2012, I joined the Internet Crimes Against

17  Children Task Force, where I have been involved in

18  several conferences and trainings pertaining to child

19  sexual exploitation cases.

20  Q.    And have you investigated child sexual exploitation

21  cases since 2012?

22  A.    Yes.

23  Q.    Have you viewed images and videos of child

24  pornography since then?

25  A.    Yes.

```
 1   Q.    Have you viewed many images and videos of child --
 2   A.    Yes, I have.
 3   Q.    Are you the case agent for defendant Michael
 4   Bordman's case?
 5   A.    Yes.
 6   Q.    Now, Count 6 of this case involves possession of
 7   child pornography in a Dropbox account.  How did you
 8   become aware that defendant had a Dropbox account?
 9   A.    After doing a search warrant on his Kyocera
10   cellphone, we observed that there was a Dropbox account
11   installed onto that phone.
12   Q.    Did you get a search warrant for content in that
13   account?
14   A.    Yes.
15   Q.    Did Dropbox send you files from this account?
16   A.    Yes.
17   Q.    When was that?
18   A.    That was in October of 2016.
19   Q.    Now, were these files provided in an organized file
20   structure?
21   A.    Yes.
22   Q.    Could you explain that?
23   A.    We received them on a flash drive, and inside that
24   flash drive, there's a folder that said Private.  And
25   inside that folder, there were several other videos,
```

1   inside that folder system.

2   Q.   The folder name Private, was that the name of the

3   folder from defendant's Dropbox account?

4   A.   Yes.

5   Q.   Have you talked to people from Dropbox about this?

6   A.   Yes.

7   Q.   Were there folders inside that folder called

8   Private?

9   A.   Yes.

10  Q.   Did those folders also have names?

11  A.   Yes, they did.

12  Q.   Were the names in the folders you received the same

13  names of the folders in defendant's Dropbox account?

14  A.   Yes.

15  Q.   Were there image and video files inside some of

16  these folders?

17  A.   Yes.

18  Q.   Did those image and video files have filenames?

19  A.   Yes.

20  Q.   Were these the same filenames that defendant had in

21  his Dropbox account?

22  A.   Yes.

23  Q.   Did you look at these files?

24  A.   Yes.

25  Q.   Did some of these files contain child pornography?

1    A.    Yes, sir.

2    Q.    Now, what is the National Center for Missing and

3    Exploited Children?

4    A.    It's a nonprofit organization.  It's a warehouse

5    that works hand-in-hand with web/internet providers, the

6    community, and also law enforcement to help identify

7    missing and sexually exploited children.

8    Q.    When you do an investigation and receive images and

9    videos of child pornography, do you send those to the

10   National Center for Missing and Exploited Children?

11   A.    Yes.

12   Q.    Did you do that in this case?

13   A.    I did.

14   Q.    Did you work with your forensic examiner?

15   A.    I did.

16   Q.    Who is that?

17   A.    Investigator Joe Schmitz with the Cedar Rapids

18   Police Department.

19   Q.    Did you send images and videos in separate folders?

20   A.    Yes.

21   Q.    Were the filenames altered in any way from the files

22   that you received?

23   A.    No.

24   Q.    Did the National Center for Missing and Exploited

25   Children send you a report listing files from known child

1  pornography series?

2  A.    Yes.

3  Q.    Did this include files from the series called Sweet

4  Sugar?

5  A.    Yes.

6  Q.    Were these files videos or images?

7  A.    Videos.

8  Q.    How many pages long was the original report you

9  received from the National Center for Missing and

10  Exploited Children?

11  A.    68 pages.

12          MR. TREMMEL:  May I approach, Your Honor.

13          THE COURT:  Yes.

14  Q.    Now I've handed you what's been admitted as

15  Government Exhibit 2.  Do you recognize that?

16  A.    Yes.

17  Q.    And what does that include?

18  A.    It has the information that I had sent, as far as

19  the request for information to NCMEC and NCMEC's report

20  back to me.

21  Q.    Let me be more specific.  Are those pages from the

22  NCMEC report?

23  A.    Yes.

24  Q.    Are they all the pages from the NCMEC report?

25  A.    No.

1  Q.    How many pages?

2  A.    We have approximately 6 pages here.

3  Q.    Okay.  Does that include the first 3 pages of

4  report -- of the NCMEC report with background

5  information?

6  A.    Yes.

7  Q.    Does it also include information relevant to the

8  Sweet Sugar series?

9  A.    Yes.

10  Q.    I'd like to direct you to Page 6 of Exhibit 2.  Does

11  that page list videos from the Sweet Sugar series?

12  A.    Yes.

13  Q.    How many videos?

14  A.    Three.

15  Q.    Now, did you --

16         MR. TREMMEL:  And, Your Honor, does the Court

17  have a copy of that exhibit in front of you?

18         THE COURT:  I'm looking for it.  I don't think

19  I have 2.

20         MS. JOHNSTON:  I have a copy.

21         THE COURT:  If I do -- oh, wait a minute.  Yes,

22  I do have it.  I'm sorry.

23  Q.    So, Investigator Bell, from the three videos listed

24  on Page 6 of Exhibit 2, do those videos contain paths?

25  A.    Yes.

1  Q.    And what is a path?

2  A.    It shows what folder that it came from and

3  subfolders.

4  Q.    And you had mentioned earlier a folder called

5  Private.  Is that listed in the path for each of the

6  videos?

7  A.    Yes.

8  Q.    And when you go to the right of the word Private in

9  each of those videos, are those subfolders under Private?

10 A.    Correct.

11 Q.    And is the filename for each of these videos

12 included in the path?

13 A.    Yes.

14 Q.    And where in the path is that; on the right or on

15 the left?

16 A.    The right side.

17 Q.    Okay.  Were any of these videos identical with each

18 other?

19 A.    Yes.

20 Q.    Numerically, which two are identical?

21 A.    The first and the third.

22 Q.    And so the first and the third were two copies of

23 the same video?

24 A.    Yes.

25 Q.    And were they in different folders?

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-JWR Document 65 Filed 07/12/17 Page 17 of 52
*to purchase a complete copy of the transcript*

```
 1   A.    Yes.
 2   Q.    Now, does Page 6 also include contact information
 3   for an investigative agency?
 4   A.    Yes.
 5   Q.    Does it include an e-mail address?
 6   A.    It does.
 7   Q.    Did you e-mail that address?
 8   A.    I did.
 9   Q.    Did you receive a response from a law enforcement
10   agent?
11   A.    I did.
12   Q.    Who did you receive a response from?
13   A.    Corporal Robin Waldron.  She's with the Royal
14   Canadian Mounted Police.
15   Q.    And did you send redacted images from these videos
16   to Corporal Waldron?
17   A.    Yes.
18   Q.    And did you work with your forensic examiner on
19   that?
20   A.    Investigator Joe Schmitz.
21   Q.    And did you do that after you received this
22   restitution request last week?
23   A.    Yes.
24   Q.    Did the redacted images -- first of all, was the
25   agent able to identify the victim depicted in any of the
```

1  videos?

2  A.    In the first and third video.

3  Q.    The two that are identical?

4  A.    The two that are identical.

5  Q.    The screen captures you sent from those videos, did

6  those include that victim's face?

7  A.    Yes.

8  Q.    Was the investigator able to identify the victim

9  depicted in the other video, the second one listed?

10  A.    No.

11  Q.    Now, without giving -- without reading the filename

12  and without giving her actual name, is a shortened form

13  of the victim's actual name included in the filenames

14  these videos had in the defendant's Dropbox account?

15  A.    Yes.

16  Q.    And is that -- are those actual filenames accurately

17  listed on Page 6 of Exhibit 2?

18  A.    Yes.

19  Q.    For purposes of this restitution record, is the

20  victim the agent identified also known as Pia?

21  A.    Yes.

22  Q.    How old is Pia currently?

23  A.    12.

24  Q.    Does the video -- and do both copies, identical

25  copies, of the video -- have you watched them?

1  A.    I have.

2  Q.    How long is that video?

3  A.    9 minutes and 37 seconds.

4  Q.    Does it have audio?

5  A.    Yes, it does.

6  Q.    And in that audio, does the victim speak?

7  A.    Yes, she does.

8  Q.    Can you describe what the video shows?

9  A.    Yes.  It describes a female, a naked female, who I

10 believe to be about the age of 4 to 5 years old, on her

11 hands and knees.  She's being penetrated with a white

12 vibrator in her anus.  This happens several times

13 throughout the video.  At one point, he requests that she

14 spread her buttocks apart, to spread her anus, to stretch

15 her anus.  He then turns her over onto her back and has

16 her hold up her legs and he rubs his penis against her

17 vagina and inserts his penis into her anus.  After this,

18 he turns her back over and continues to penetrate her

19 with the vibrator.  At the very end of the video, it

20 shows her squatting over a glass jar urinating in it.

21 Q.    And in comparison with other child pornography

22 videos you have observed, is this more or less graphic?

23 A.    It's more graphic.

24        MR. TREMMEL:  Thank you.  That's all the

25 questions I have.

```
 1              THE COURT:  Cross-examination.

 2              MS. JOHNSTON:  Thank you.

 3                    CROSS-EXAMINATION

 4  BY MS. JOHNSTON:

 5  Q.   Investigator Bell, in these folders and subfolders

 6  that you described for Mr. Bordman's Dropbox account,

 7  there was also adult pornography in there, correct?

 8  A.   Correct.

 9  Q.   And you have no information that Mr. Bordman had any

10  part in producing these videos of the victim known as

11  Pia, correct?

12  A.   Correct.

13  Q.   And Mr. Bordman was not depicted in the videos of

14  Pia, correct?

15  A.   Correct.

16              MS. JOHNSTON:  No further questions.  Thank

17  you.

18              MR. TREMMEL:  Nothing further, Your Honor.

19              THE COURT:  Thank you.

20              THE WITNESS:  Thank you.

21              THE COURT:  All right.  Would you like to have

22  argument?  I guess I'll start with Ms. Johnston.  I've

23  read your materials, but anything else that you want to

24  say?

25              MS. JOHNSTON:  Your Honor, I have nothing
```

further to add on the issue of restitution beyond what is in the response that I filed to the government's request for restitution.

        THE COURT:  Anything else you want to say, Mr. Tremmel?

        MR. TREMMEL:  Yes, Your Honor.  I read the defendant's response, and I would note that defense does cite the *Loreng* case, which is a pre-*Paroline* case, and so the *Loreng* case did not order any restitution we think under -- because, in part, it -- of the many vague aspects of determining this, although the point that the *Loreng* case made about the denominator is definitely true.  The more people who ask for restitution, the smaller the number gets.  That's true.  That doesn't mean that there should be no restitution, but it is one of the factors that the Court can consider.

    We would note in the *Beckmann* case, which we cited, the government, there were three victims, and the government gave calculations of $675, $1,600, and $2,400, but nevertheless requested $3,000 in restitution for each, and that was awarded.  So the calculation is one factor.

    One factor is also the original abuse.  And as we point out in our memo, the figure we calculate does not divide out the percentage of harm due to the original

 1   abuse and due to the dissemination of images.  The Court

 2   does have the option/discretion to reduce for that.  But

 3   we would note that over time -- and there's nothing in

 4   the evidence in this case from the expert stating

 5   percentages for original abuse or percentages for

 6   dissemination of the images.  But we would note that over

 7   time, as the original abuse gets more and more years ago,

 8   and the internet images keep appearing and keep appearing

 9   and there keep being more notifications, we believe that

10   is a reason that the percentage of harm from the

11   dissemination on the internet does continue to increase

12   over the years, but we have no formula for that.

13       Our argument is that you start -- one of the factors

14   you can consider is the numerical calculation, but you

15   also, Your Honor, can consider other things.  One of

16   those issues would be distribution.  And the parties

17   agree, there's no evidence of distribution in this case.

18   One of the factors could be was the defendant involved in

19   the production.  And the defendant was not involved in

20   the production of the images of Pia.  However, other

21   factors include these are videos, not images, and we know

22   the guidelines do not govern this issue, but the

23   guidelines do say 75 images is a video.  There are two

24   copies of the same video in different folders in this

25   case.  And we would also note a very aggravating factor

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:16-cr-00081-LRR-JSS   Document 65   Filed 07/11/17   Page 23 of 52

```
1   for this is the nature of this video.  The question is
2   the harm done to the victim; and the defendant's
3   possession of this video, which is more severe than other
4   videos, does more harm to the victim than even an average
5   child pornography does, and all of these images and
6   videos do harm to the victim.  And so we would ask the
7   Court to consider that as well.  And so for all of these
8   reasons, as we outlined in our memo, we would request
9   restitution in the amount of $3,000.  Thank you.
10          THE COURT:  The Court is ready to rule by a
11  preponderance of the evidence, after considering the
12  arguments made by counsel, and they have briefed the
13  cases that we have.  And it's a difficult call, but I
14  believe, and I do find, that restitution in the amount of
15  $3,000 to Pia is appropriate, and that will be an award
16  that I make at time of imposition of sentence.
17      All right.  Are we now ready to move on to
18  disposition?  I believe, Ms. Johnston, you had asked for
19  a sentence below the advisory guideline range, and I'll
20  be happy to hear from you.
21          MS. JOHNSTON:  Thank you, Your Honor.  Your
22  Honor, I would just note that there's also an issue
23  regarding a couple of the conditions of supervised
24  release.
25          THE COURT:  You can, yeah, go ahead and talk
```

        1   about that too.

        2           MS. JOHNSTON:  Your Honor, I don't have any

        3   additional argument on the conditions of supervised

        4   release beyond what's in my memo.  I would just argue to

        5   the Court that the challenged conditions are overbroad

        6   and vague.  We do acknowledge that there is case law from

        7   the Eighth Circuit out there that says that imposition of

        8   these conditions in this type of case is appropriate, but

        9   we are asking you to not impose them due to the vagueness

       10   concerns and the overbreadth concerns and especially

       11   because at least one of the conditions would impinge on

       12   Mr. Bordman's right to view material that is protected by

       13   the First Amendment.  So for these reasons, Your Honor,

       14   we are asking that you not impose certain conditions of

       15   supervised release as requested -- or excuse me,

       16   recommended in the presentence report.

       17        Regarding the issue of a downward variance, we are

       18   asking that you vary downward in this case.  And we

       19   acknowledge the severity of Mr. Bordman's conduct in this

       20   case.  There is no excuse for possessing child

       21   pornography.  There is certainly no excuse for

       22   exploitation of a child.  But we're asking you to

       23   sentence him to 15 to 20 years in prison.  That is not a

       24   short sentence by anybody's standards.  And we believe

       25   that such a sentence would be long enough to achieve

1   deterrence and to also provide just punishment for

2   Mr. Bordman, especially in light of the fact that

3   Mr. Bordman is a true category I offender.

4       He has no criminal convictions on his record at all.

5   He's not the type of person who is a category I offender

6   because either his convictions are too old and just

7   didn't score points or because of the fact that they are

8   of such a nature that the Sentencing Commission said that

9   they shouldn't score criminal history points.  He is

10  truly a category I offender.  And for this reason, we

11  feel that a sentence of 15 to 20 years would be

12  appropriate and would achieve all the goals of

13  sentencing.

14      It seems to me that what would be most important in

15  this case, rather than a prison sentence of 50 years,

16  which is what is recommended by the guidelines, is to

17  have Mr. Bordman get some intensive sex offender

18  treatment.  That's something he obviously needs.  And

19  there's no evidence that he's had anything like that in

20  the past.  We know that he has gotten some counseling for

21  the abuse that he suffered as a child, but we don't know

22  the extent of that or the focus of it.  I would hazard to

23  guess that the counseling was more focused on helping

24  Mr. Bordman deal with his being a victim of sexual abuse

25  as a child and not anything forward-looking and, you

know, maybe what that abuse could mean for his actions in the future and so forth.

So again, Your Honor, I think that this is a situation where getting Mr. Bordman some treatment and counseling for his actions that put him here is much more important than simply locking him up for 50 years. He does need to be punished. We're not disputing that. But again, a sentence of 15 to 20 years is a very long sentence.

I would argue to the Court that Mr. Bordman has fully accepted responsibility in this case. We withdrew some of the objections we had to the conduct in this case, and so we're not challenging any of the offense conduct here. And so for this reason we believe he has fully accepted responsibility.

So for all these reasons, Your Honor, and for any additional information set forth in my sentencing memo, we are asking that you vary downward in this case. Thank you.

THE COURT: Mr. Tremmel.

MR. TREMMEL: Your Honor, briefly, on the special conditions of supervised release, there is a need to protect children from further exploitation that justifies these conditions. And an individualized inquiry into the facts of this case, including Paragraphs

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-JWc Document 65 Filed 07/11/17 Page 27 of 52
*To purchase complete copy of the transcript*

1    6 through 17 and 19 through 21A of the PSIR, does support

2    these conditions.

3        On the variance, the government resists the motion

4    for variance, and we are asking for a 50-year sentence.

5    And the primary reason for this is the egregious nature

6    of the offense against this victim.  She was -- this

7    occurred when she was age one-and-a-half to

8    two-and-a-half.  It went on for almost a year because,

9    from what we have, there was one image that was posted in

10   August of 2015 and then the conduct outlined in the PSIR

11   in July of 2016.  This conduct included sexual abuse.  It

12   also included distribution of these images he produced to

13   others, three listed in the PSIR.  First of all, the man

14   from Australia listed in Paragraphs 11 through 13.  The

15   person -- secondly, the person in Paragraph 15.  And

16   thirdly, the person in Paragraph 19, where he sent that

17   person four depictions of the victim in hopes of getting

18   a bestiality video.

19       So producing this child pornography was not only a

20   means of sexually satisfying himself; it was also a means

21   of using the victim to get what he wanted from others.

22   He bragged to others about his sexual abuse of the

23   victim, not only to the three he distributed the images

24   to, but to others listed in Paragraph 17 and in Paragraph

25   20, and repeatedly stated her age.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:16-cr-00081-LRR-JWR Document 65 Filed 07/11/17 Page 28 of 52

```
1        He traded child pornography, is another aggravating

2   factor in this case.  He belonged to a Kik group, where

3   he talked openly about his sexual interest in young

4   children.  He possessed child pornography on his phone,

5   in a Google account, in a Dropbox account.  The Google

6   account included two images of the primary victim in this

7   case.  And the Dropbox account included prepubescent

8   depictions, including penetration of toddlers and

9   infants.

10        Regarding defendant's history and characteristics,

11  his victimization and what is outlined and what he has

12  said about that and what's in the court records

13  summarized in the PSIR, that is part of his history to

14  consider.  However, whatever his history, that did not

15  deprive him of the ability to make independent decisions,

16  including decisions that hurt other people.  In the PSIR,

17  there are noted four different instances of threatening

18  behavior that he had towards other individuals.  Now,

19  they were not directly connected with this case, but what

20  those threats show was that this was not just a person

21  who passively responds to others's requests.  He went

22  out, he obtained sexually explicit pictures of others, he

23  threatened to distribute these pictures in order to get

24  what he wanted.  This is not a person who is afraid to

25  reach out and contact other individuals.  And all of this
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-JWR Document 65-1 Filed 07/11/17 Page 29 of 52
*Computer-Aided Copy of the Transcript*

1    conduct shows that his risk to reoffend is high.

2        But the most significant aggravating factor in this

3    case is his conduct towards the young victim.  He made a

4    deliberate decision over a period of almost a year to

5    abuse her, to exploit her further by recording the abuse,

6    and then to distribute these depictions to others.

7        50 years is the guideline sentence given the

8    statutory maximum.  It is a lengthy sentence, but for

9    this defendant, based on all the 3553(a) factors, it is

10   the appropriate sentence.  So we would respectfully

11   request that the Court deny the defendant's motion for a

12   downward variance.  Thank you.

13        THE COURT:  Mr. Bordman, this is the time in

14   the proceeding when you have a chance to speak.  You do

15   not have to say anything unless you want to.

16        THE DEFENDANT:  I would like to say that I know

17   my actions were inappropriate and unacceptable, and I am

18   sorry for my behavior.  And I just want to say that I'm

19   going to use this to make myself a better person.  That

20   is all.

21        THE COURT:  All right.  Then the Court is ready

22   to make its findings.  First, on the disputed issues with

23   regard to the conditions of supervision, Mr. Tremmel, on

24   Page 2 of his brief, Document 44, sets forth the test.

25   District courts have wide discretion to impose conditions

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-JWR Document 65 Filed 07/11/17 Page 30 of 52
*to purchase a complete copy of the transcript*

 1   of supervised release, but it's not without some

 2   boundaries, including the Court is required to consider

 3   the nature and circumstances of the offense.  In this

 4   case, we have a person who produced child pornography,

 5   who also accessed child pornography, and who distributed

 6   it.  Also, there is an interest, apparently, in

 7   bestiality and adult pornography.

 8       Defendant's history and characteristics are set

 9   forth in the presentence investigation report.

10   Deterrence is obviously very critical here.  I think he

11   is at extremely high risk to recidivate.  And the

12   protection of the public, and, of course, his education,

13   vocational training needs, and need for any correctional

14   treatment has been considered.  I'm aware the conditions

15   that I impose must not involve a greater deprivation of

16   liberty than is reasonably necessary to achieve such

17   purposes, and we have to remain consistent with the

18   Sentencing Commission policy statements.

19       I overrule each and every objection to the terms of

20   supervised release found at Paragraph 80, 81, and 89.  On

21   89, he has admitted his use of marijuana, and that's in

22   the presentence investigation report.  In addition, in

23   the offense conduct section, it's clear defendant was

24   using marijuana during the time period that he committed

25   these offenses against children.  So I will be imposing

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-JWW   Document 65   Filed 07/11/17   Page 31 of 52
*to purchase complete copy of the transcript*

1   each and every one of those.

2       In terms of the request for a downward variance, the

3   Court is aware that it has the power to vary downward

4   after a careful consideration of all the factors at

5   18 United States Code Section 3553(a).  The goal of

6   sentencing is to arrive at the sentence that is

7   sufficient but not greater than necessary to achieve the

8   goals of sentencing.

9       The Court did examine each and every factor under

10  3553(a) of Title 18 in evaluating the arguments made for

11  a downward variance.  I find no basis for a downward

12  variance, and I decline the invitation to vary downward.

13  I considered the oral arguments for a downward variance,

14  as well as the written, and, of course, the government's

15  resistance thereto, both here in court and in the written

16  materials.

17      The fact that he has no -- I'm just going to talk

18  about a few of the arguments made.  Yes, he has no

19  criminal history.  That is very typical of individuals

20  who offend against children.  It's very unusual, in my

21  history on this court, to find a person who has committed

22  the offenses that Mr. Bordman has who has any criminal

23  history or any of significance.  And, of course, the lack

24  of a criminal history has been taken into account under

25  the advisory guidelines.  He scores criminal history

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*

Case 1:16-cr-00081-LRR   Document 65   Filed 07/11/17   Page 32 of 52
to purchase a complete copy of the transcript.

category I.  It's just that his offense conduct is so outrageous that he's well above the sentencing charts, and the only saving salvation for him is the cap on the statutory provisions.

Intensive sex offender treatment may be appropriate. I don't know what the current statistics are on sex offender treatment.  Not always successful, but certainly he'll be given that opportunity to change his behavior, but it is not a substitute for incarceration in this case because he is a danger to the community and is at extreme high risk to recidivate in the Court's mind.

In terms of his own reported abuse as a child, I want to make sure that it's understood that there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult, and there's nothing in this record that makes that assertion. The fact that he took responsibility will be considered in the calculation, but frankly, reading this report, I would say that the evidence is overwhelming against him, and I think a trial in this case would have been futile. But I will give him the acceptance of responsibility.

I just picked out a few things to comment on.  I have considered each and every argument made by Ms. Johnston for a downward variance and just find that there's no basis for me to do that, and I decline.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*To purchase a complete copy of the transcript.*
Case 1:16-cr-00081-LRR-JWR   Document 65   Filed 07/11/17   Page 33 of 52

1       Anything else that we need to talk about?  You

2   indicated, Mr. Tremmel, that there is a $5,000 special

3   assessment provided under the statute at 18 United States

4   Code Section 3014, and you are not pursuing that because

5   of his financial condition.

6              MR. TREMMEL:  Correct, Your Honor.

7              THE COURT:  There's obviously many victims in

8   this offense, but I do not think there's anyone in court

9   today to speak on victim impact.  And, Mr. Tremmel, I

10  know you've been in touch with victims.  As far as you

11  know, has every victim been notified or their

12  representative?

13             MR. TREMMEL:  Yes, Your Honor.  And the only

14  restitution request we've received is the one we

15  presented, and we have received no request for

16  restitution or victim impact statement from the primary

17  victim in this case.

18             THE COURT:  All right.  And, Ms. Johnston, is

19  there anything else you think we need to consider before

20  the Court goes forward with the final disposition

21  findings?

22             MS. JOHNSTON:  No, Your Honor.  I think

23  everything's been addressed.

24             THE COURT:  All right, thank you.  Then the

25  Court is ready to make its findings.  In arriving at a

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-JNK Document 65-1 Filed 07/11/17 Page 34 of 52
to purchase a complete copy of the transcript

1  disposition, I have carefully considered each and every

2  factor under 18 United States Code Section 3553(a).  I

3  won't discuss each and every factor, but rest assured,

4  each has been very carefully considered.  We have

5  computed the advisory guideline sentencing range using

6  the United States sentencing guidelines and the policy

7  statements of the Sentencing Commission.

8      I do grant maximum acceptance of responsibility, and

9  we are left with total offense level 43.  He's criminal

10  history category I.  Again, he would ordinarily receive a

11  life sentence under the advisory guidelines, except that

12  the statutory provisions cap the sentence that I can

13  impose at 50 years or 600 months.  So that is the

14  guideline sentence.  Supervised release, under the

15  advisory guidelines, 5 to life, 5 years to life on each

16  count of conviction.  Probation is not available.  The

17  fine, 50,000 to $500,000.  $200 in special assessments.

18  And then the $3,000 in restitution to the victim

19  identified as Pia.

20      The Court then turns to the nature and circumstances

21  of the offense.  And it is undisputed from about August

22  of 2015 to July of 2016, Mr. Bordman produced sexually

23  explicit depictions of ███████████ when she was between

24  about a year-and-a-half and two-and-a-half years old.  He

25  used the Kik messenger, K-I-K messenger, a cellphone, and

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-JWS Document 65 Filed 07/12/17 Page 35 of 52
*to purchase complete copy of the transcript*

the internet to send some of these depictions to others.
And Officer Korth has detailed that in the presentence
investigation report, unobjected to.  He also used those
same things, the Kik messenger, cellphone, and internet,
to send and receive other depictions of child
pornography.

    In terms of his history and characteristics, he's
age 23.  He's single.  He ████████████████████████ the
victim here.  He was victimized by his father as a child,
and his parents went to prison for that criminal
behavior.

    He reports foster care placements and group home
placements throughout his childhood.  He reports a
typical relationship with his sisters.  Although he
reports suffering from some physical problems, he's not
been on any medications since being incarcerated.  He
reports a prior mental health diagnosis, and that has not
been substantiated, but, of course, during the time he's
in prison and while he's on supervised release, that
should be explored, and the Court will provide for that.
He self-reports using marijuana, he says once every
couple months when he's stressed out.  Last use
reportedly occurred at age 22.  He's 23 now.  He did
graduate from high school in May of 2012.  Minimal
employment history.  No known adult criminal history,

```
1   although as a juvenile, apparently, he had some
2   misdemeanor offenses.
3        The Court is aware that the sentence I impose must
4   reflect the seriousness of the offense, promote respect
5   for the law, be a just punishment, afford adequate
6   deterrence to criminal conduct, protect the public from
7   further crimes of the defendant, provide the defendant
8   with needed education, vocational training, medical care,
9   or other correctional treatment in the most effective
10  manner, and, of course, I'm always aware that I need to
11  make sure that I am not creating any unwarranted sentence
12  disparities among defendants with similar records found
13  guilty of similar conduct.  I draw on my own experience
14  as a federal judge for about 15 years in making that
15  determination, as well as the advisory guidelines, which
16  are very helpful when you are trying to avoid unwarranted
17  sentence disparities.  I've considered the kinds of
18  sentences available, of course.  And the Court finds the
19  sentence that is sufficient but not greater than
20  necessary to achieve the goals of sentencing is a
21  600-month sentence.  And I will be imposing a 25-year
22  supervised release term.  And just to talk about that for
23  a moment, assuming that there is this 50-year sentence
24  and assuming that he gets some credit over the years for
25  good behavior in prison, I think a supervised release
```

term of 25 years is necessary to protect the public,
given the very severe and aggravating offense conduct in
this case.

So it is the judgment of the Court that Michael
Bordman's committed to the custody of the Bureau of
Prisons to be imprisoned for 600 months, broken down as
360 months on Count 1, 240 months on Count 4, with those
terms to be served consecutively.

I recommend two things to the Bureau of Prisons.
First, that he be designated to a Bureau of Prisons'
facility in close proximity to his family, commensurate
with his security and custody classification needs.

And, Ms. Johnston, he lists Wichita Falls as his
legal address, so if I don't specify -- I'm not sure if
the Bureau of Prisons will use Iowa or Texas.  Which does
he prefer?

MS. JOHNSTON:  Texas, Your Honor.

THE COURT:  Then I'll ask Officer Korth to put
in parentheses Texas so there's no confusion on that.

I also recommend that he participate in the Bureau
of Prisons' Residential Sex Offender Management Program.

Mr. Bordman, upon your release from imprisonment,
you'll be on supervised release for a total term of
25 years, 25 years on each count of conviction, with
those running concurrently.  Mr. Bordman, within 72 hours

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-CJW Document 65 Filed 07/11/17 Page 38 of 52
*to purchase a complete copy of the transcript*

of release from custody of the Bureau of Prisons, you
must report in person to the probation office in the
district to which you are released. While you are on
supervised release, you must comply with the standard
conditions of supervision set out in the judgment order.

In addition, you must not commit any federal, state,
or local crimes. You must not illegally possess a
controlled substance. You must not possess a firearm,
ammunition, a destructive device, or any dangerous
weapon. You must register with the state sex offender
registration agency in any state in which you reside,
work, or are a student as directed by probation. And you
must, of course, cooperate in the collection of a DNA
sample.

Mr. Bordman, you are now a convicted felon. One of
the things that means is it's against federal and state
law for you to possess for any reason a firearm or
ammunition, and that prohibition continues for the rest
of your life.

While on supervised release, you must comply with
all of the special conditions set forth in the special
conditions of supervision section of the presentence
investigation report. That's Paragraphs 79 through 90.
The three conditions that you objected to have been
heard -- I've heard argument on, and I overrule those

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:16-cr-00081-LRR-JDW Document 65 Filed 07/11/17 Page 39 of 52

1    objections and impose those conditions.

2         No fine is imposed because you do not have the money

3    to pay it at this time.  Special assessment, $200, $100

4    on each count of conviction.  I have considered whether

5    you should be ordered to pay the special assessment of

6    $5,000 on each count pursuant to 18 United States Code

7    Section 3014.  I find that you do not have the ability to

8    pay an additional special assessment, and I don't -- and

9    I decline to assess that against you.

10        I order that you make restitution in the amount of

11   $3,000 to Pia.  Payments shall be made to the United

12   States Clerk of Court for the Northern District of Iowa

13   for distribution to the victim in this case.  While you

14   are incarcerated, you must make monthly payments in

15   accordance with the Bureau of Prisons' Financial

16   Responsibility Program.  The amount of the monthly

17   payments will not exceed 50 percent of the funds

18   available to you through institution or noninstitution

19   resources.  And you have to pay at least $25 per quarter.

20   If you still owe any portion of the financial obligations

21   at the time of your release from imprisonment, you must

22   pay it as a condition of supervision.  And the probation

23   office will pursue collection of the amount due and

24   request the Court to establish a payment schedule if

25   appropriate.  For as long as you owe any fines or

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:16-cr-00081-LRR-JWR  Document 65  Filed 07/11/17  Page 40 of 52

```
 1   restitution ordered as part of this offense, you must
 2   notify the United States Attorney in the Northern
 3   District of Iowa within 30 days of any change of your
 4   mailing or residence address that occurs while any
 5   portion of the financial obligations remain unpaid.  And
 6   that is because even if you have not paid the restitution
 7   at the time you're discharged from supervision, the
 8   United States Attorney's Office will continue to pursue
 9   you until you have paid that $3,000, so you have to keep
10   them advised of your mailing and residence address.
11        Pursuant to 18 United States Code Section
12   3143(a)(2), you are immediately remanded to the United
13   States Marshal's Service.
14        Counts 2, 3, 5, and 6 are out there as to this
15   defendant.
16             MR. TREMMEL:  The government moves to dismiss
17   Counts 2, 3, 5, and 6, Your Honor.
18             THE COURT:  And they are dismissed as to
19   Michael Bordman.
20        Mr. Bordman, it's my understanding that you and the
21   government entered into an agreement, a plea agreement,
22   whereby you waived your right to appeal unless certain
23   circumstances existed at the conclusion of the sentencing
24   hearing.  I think that your plea -- or your appeal rights
25   are gone, but -- go ahead.
```

```
 1        MR. TREMMEL:  Your Honor, in this case, we had
 2   a waiver of specific issues, and the specific issues that
 3   the defendant was waiving his right to appeal on were
 4   multiplicity or duplicity of the counts, any claim that
 5   it was double jeopardy to plead to both counts, and any
 6   claim that a sentence of 30 to 50 years exceeded the
 7   maximum statutory penalty, so it was a waiver tailored to
 8   those issues, not a general appeal waiver.
 9        THE COURT:  All right.  So you -- I'm not going
10   to get into or make a determination as to whether or not
11   you have waived your right to appeal certain aspects of
12   the sentencing.  I'll ask you to consult with your
13   attorney, and if you believe that you have appeal rights
14   and you want to file an appeal, you have to file a
15   written notice of appeal with the Clerk of Court here in
16   the United States District Court for the Northern
17   District of Iowa within 14 days of the filing of the
18   judgment order.  If you are not able to afford an
19   attorney to appeal, the Court will appoint one to
20   represent you.
21        Anything else that we need to handle today?
22        MR. TREMMEL:  No, Your Honor.
23        THE COURT:  Ms. Johnston?
24        MS. JOHNSTON:  Nothing further.
25        THE COURT:  Mr. Bordman, do you have any
```

1  questions about anything I talked about today?

2          THE DEFENDANT:  No.

3          THE COURT:  This concludes the hearing.  Thank

4  you.

5      (Proceedings concluded at 10:58 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  C E R T I F I C A T E

 2          I, Patrice A. Murray, a Certified Shorthand
     Reporter of the State of Iowa, do hereby certify that at
 3   the time and place heretofore indicated, a hearing was
     held before the Honorable Linda R. Reade; that I reported
 4   in shorthand the proceedings of said hearing, reduced the
     same to print to the best of my ability by means of
 5   computer-assisted transcription under my direction and
     supervision, and that the foregoing transcript is a true
 6   record of all proceedings had on the taking of said
     hearing at the above time and place.
 7
            I further certify that I am not related to or
 8   employed by any of the parties to this action, and
     further, that I am not a relative or employee of any
 9   attorney or counsel employed by the parties hereto or
     financially interested in the action.
10
        IN WITNESS WHEREOF, I have set my hand this 10th day
11   of July, 2017.

12
                 /s/ Patrice A. Murray
13               Patrice A. Murray, CSR, RPR, RMR, FCRR
                 United States District Court, NDIA
14               111 Seventh Avenue S.E., Box 4
                 Cedar Rapids, Iowa 52401-2101
15

16
                 I certify that the foregoing is a correct copy
17   of the transcript originally filed with the Clerk of
     Court at Docket 65, incorporating requested redactions of
18   personal identifiers and any other redactions ordered by
     the Court, in accordance with Administrative Order
19   08-AO-0009-P.

20               /s/ Patrice A. Murray
                 Patrice A. Murray, CSR, RPR, RMR, FCRR
21               United States District Court, NDIA
                 111 Seventh Avenue S.E., Box 4
22               Cedar Rapids, Iowa 52401-2101

23

24

25
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR   Document 67   Filed 07/11/17   Page 44 of 52
*to purchase a complete copy of the transcript*

## $

**$1,600** [1] - 22:19
**$100** [3] - 4:1, 4:13, 40:3
**$2,400** [1] - 22:19
**$2,887.75** [1] - 10:13
**$200** [3] - 8:13, 35:17, 40:3
**$25** [1] - 40:19
**$250,000** [2] - 3:25, 4:12
**$3,000** [7] - 10:17, 22:20, 24:9, 24:15, 35:18, 40:11, 41:9
**$5,000** [4] - 5:10, 5:16, 34:2, 40:6
**$500,000** [2] - 8:12, 35:17
**$6,000** [1] - 10:4
**$675** [1] - 22:19
**$95,295.71** [1] - 10:12

## /

**/s** [1] - 44:12

## 1

**1** [12] - 1:10, 2:8, 3:19, 4:7, 4:11, 4:20, 6:20, 7:21, 9:2, 9:5, 9:10, 38:7
**10:58** [1] - 43:5
**10th** [1] - 44:10
**11** [2] - 2:3, 28:14
**111** [4] - 1:10, 1:17, 1:24, 44:14
**12** [4] - 4:5, 6:19, 6:25, 19:23
**12th** [1] - 1:17, 5:2
**13** [3] - 10:9, 10:15, 28:14
**14** [1] - 42:17
**15** [6] - 3:22, 25:23, 26:11, 27:8, 28:15, 37:14
**16-44** [1] - 10:1
**16-81** [1] - 1:5
**16-CR-81-1** [1] - 3:3
**17** [2] - 28:1, 28:24
**18** [6] - 32:5, 32:10, 34:3, 35:2, 40:6, 41:11
**19** [2] - 28:1, 28:16

## 2

**2** [18] - 2:9, 7:1, 7:3, 7:9, 7:13, 7:17, 7:21, 9:3, 9:5, 9:10, 15:15, 16:10, 16:19, 16:24, 19:17, 30:24, 41:14, 41:17
**20** [5] - 4:6, 25:23, 26:11, 27:8, 28:25
**2002** [1] - 11:16
**2012** [3] - 11:16, 11:21, 36:24

**2015** [2] - 28:10, 35:22
**2016** [4] - 3:16, 12:18, 28:11, 35:22
**2017** [4] - 1:17, 5:2, 9:24, 44:11
**21** [1] - 2:3
**21A** [1] - 28:1
**22** [2] - 3:16, 36:23
**222** [1] - 1:12
**23** [2] - 36:8, 36:23
**240** [1] - 38:7
**25** [3] - 38:1, 38:24
**25-year** [1] - 37:21
**27** [1] - 6:21
**286-2338** [1] - 1:25
**290** [1] - 1:12

## 3

**3** [9] - 2:10, 8:1, 9:3, 9:6, 9:10, 9:12, 16:3, 41:14, 41:17
**30** [3] - 3:23, 41:3, 42:6
**3014** [2] - 34:4, 40:7
**31** [2] - 9:14, 10:10
**3143(a)(2** [1] - 41:12
**319** [1] - 1:25
**32** [2] - 6:22, 10:11
**33** [2] - 10:12
**3553(a** [2] - 30:9, 32:10
**3553(a)** [2] - 32:5, 35:2
**360** [1] - 38:7
**37** [2] - 7:15, 20:3
**39** [1] - 5:1

## 4

**4** [11] - 1:24, 4:2, 4:7, 4:10, 4:20, 6:23, 7:5, 7:15, 20:10, 38:7, 44:14
**43** [3] - 8:3, 8:7, 35:9
**44** [1] - 30:24
**46** [1] - 7:14
**48** [1] - 8:2

## 5

**5** [8] - 3:24, 4:10, 8:10, 20:10, 35:15, 41:14, 41:17
**50** [8] - 4:9, 8:10, 26:15, 27:6, 30:7, 35:13, 40:17, 42:6
**50,000** [2] - 8:12, 35:17
**50-year** [2] - 28:4, 37:23
**51** [2] - 7:16, 8:1
**52401** [2] - 1:10, 1:13
**52401-2101** [2] - 1:24, 44:14

## 6

**6** [9] - 12:6, 16:2, 16:10,

16:24, 18:2, 19:17, 28:1, 41:14, 41:17
**6/19/17** [1] - 1:21
**600** [2] - 35:13, 38:6
**600-month** [1] - 37:21
**68** [1] - 15:11

## 7

**7** [1] - 9:24
**7/10/17** [1] - 1:21
**72** [1] - 38:25
**75** [1] - 23:23
**79** [1] - 39:23

## 8

**80** [1] - 31:20
**81** [1] - 31:20
**89** [2] - 31:20, 31:21

## 9

**9** [7] - 2:8, 2:9, 2:10, 20:3
**90** [1] - 39:23
**9:57** [1] - 1:18

## A

**a.m** [2] - 1:18, 43:5
**ability** [3] - 29:15, 40:7, 44:4
**able** [4] - 6:11, 18:25, 19:8, 42:18
**absent** [1] - 8:9
**abuse** [9] - 22:23, 23:1, 23:5, 23:7, 26:21, 26:24, 27:1, 28:11, 28:22, 30:5, 33:12, 33:15
**Academy** [1] - 11:15
**acceptance** [5] - 7:16, 7:19, 7:22, 33:21, 35:8
**accepted** [2] - 27:11, 27:15
**accepts** [1] - 6:18
**accessed** [1] - 31:5
**accordance** [1] - 40:15
**account** [15] - 12:7, 12:8, 12:10, 12:13, 12:15, 13:3, 13:13, 13:21, 19:14, 21:6, 29:5, 29:6, 29:7, 32:24
**accurately** [1] - 19:16
**achieve** [5] - 25:25, 26:12, 31:16, 32:7, 37:20
**acknowledge** [2] - 25:6, 25:19
**act** [1] - 7:2
**action** [2] - 44:8, 44:9
**actions** [3] - 27:1, 27:5, 30:17
**actual** [3] - 19:12, 19:13,

19:16
**add** [1] - 22:1
**added** [6] - 6:23, 7:1, 7:3, 7:5, 7:9, 8:1
**addition** [3] - 9:11, 31:22, 39:6
**additional** [5] - 7:22, 9:15, 25:3, 27:17, 40:8
**address** [5] - 18:5, 18:7, 38:14, 41:4, 41:10
**addressed** [1] - 34:23
**adequate** [1] - 37:5
**adjusted** [2] - 7:14, 10:9
**admitted** [2] - 15:14, 31:21
**adult** [4] - 21:7, 31:7, 33:15, 36:25
**advised** [1] - 41:10
**advisory** [8] - 6:19, 8:2, 24:19, 32:25, 35:5, 35:11, 35:15, 37:15
**affirmed** [1] - 11:3
**afford** [2] - 37:5, 42:18
**afraid** [1] - 29:24
**age** [7] - 4:5, 6:24, 20:10, 28:7, 28:25, 36:8, 36:23
**agency** [2] - 18:3, 39:11
**agent** [4] - 12:3, 18:10, 18:25, 19:20
**aggravating** [4] - 23:25, 29:1, 30:2, 38:2
**ago** [1] - 23:7
**agree** [3] - 5:17, 8:15, 23:17
**agreeing** [2] - 9:17
**agreement** [2] - 41:21
**ahead** [2] - 24:25, 41:25
**almost** [2] - 28:8, 30:4
**altered** [1] - 14:21
**Amendment** [1] - 25:13
**AMERICA** [1] - 1:3
**ammunition** [2] - 39:9, 39:18
**amount** [7] - 8:15, 8:21, 24:9, 24:14, 40:10, 40:16, 40:23
**anus** [4] - 20:12, 20:14, 20:15, 20:17
**apart** [1] - 20:14
**appeal** [9] - 41:22, 41:24, 42:3, 42:8, 42:11, 42:13, 42:14, 42:15, 42:19
**APPEARANCES** [1] - 1:9
**appearances** [1] - 23:8
**appeared** [3] - 1:11, 1:13, 4:15
**appearing** [2] - 23:8
**appendix** [1] - 5:5
**apply** [1] - 7:8
**appoint** [1] - 42:19
**approach** [1] - 15:12
**appropriate** [6] - 24:15, 25:8, 26:12, 30:10, 33:5, 40:25
**April** [1] - 5:2

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*Unpurchased complete copy of the transcript*
Case 1:16-cr-00081-LRR-CJW Document 65-1 Filed 07/11/17 Page 45 of 52

**argue** [2] - 25:4, 27:10
**argument** [5] - 21:22, 23:13, 25:3, 33:23, 39:25
**arguments** [4] - 24:12, 32:10, 32:13, 32:18
**arrive** [1] - 32:6
**arriving** [1] - 34:25
**aspects** [2] - 22:11, 42:11
**assertion** [1] - 33:16
**assess** [1] - 40:9
**assessment** [9] - 4:1, 4:13, 5:10, 5:16, 8:13, 34:3, 40:3, 40:5, 40:8
**assessments** [1] - 35:17
**Assistant** [1] - 1:10
**assisted** [1] - 44:5
**assume** [1] - 7:20
**assuming** [2] - 37:23, 37:24
**assumption** [1] - 6:10
**assured** [1] - 35:3
**attached** [1] - 5:5
**attained** [2] - 4:4, 6:24
**ATTORNEY** [2] - 1:10, 1:12
**attorney** [5] - 4:14, 6:15, 42:13, 42:19, 44:9
**Attorney** [2] - 1:10, 41:2
**Attorney's** [2] - 3:9, 41:8
**attorneys** [1] - 5:4
**audio** [2] - 20:4, 20:6
**August** [2] - 28:10, 35:21
**Australia** [1] - 28:14
**available** [5] - 4:11, 8:12, 35:16, 37:18, 40:18
**Avenue** [5] - 1:10, 1:12, 1:17, 1:24, 44:14
**average** [1] - 24:4
**avoid** [1] - 37:16
**await** [1] - 7:17
**award** [1] - 24:15
**awarded** [3] - 3:25, 4:13, 22:21
**aware** [5] - 12:8, 31:14, 32:3, 37:3, 37:10

## B

**background** [1] - 16:4
**base** [1] - 6:21
**based** [1] - 30:9
**basis** [2] - 32:11, 33:25
**Beckmann** [1] - 22:17
**become** [1] - 12:8
**BEFORE** [1] - 1:16
**behalf** [3] - 1:11, 1:13, 3:11
**behavior** [5] - 29:18, 30:18, 33:8, 36:11, 37:25
**Bell** [6] - 2:3, 9:5, 10:24, 11:10, 16:23, 21:5
**BELL** [1] - 11:2
**belonged** [1] - 29:2
**below** [1] - 24:19

**best** [1] - 44:4
**bestiality** [2] - 28:18, 31:7
**better** [1] - 30:19
**between** [2] - 33:14, 35:23
**beyond** [2] - 22:1, 25:4
**BOARDMAN** [1] - 1:6
**Bordman** [26] - 3:3, 3:12, 3:13, 3:15, 5:19, 5:25, 6:3, 8:7, 8:14, 21:9, 21:13, 26:2, 26:3, 26:17, 26:24, 27:4, 27:10, 30:13, 32:22, 35:22, 38:22, 38:25, 39:15, 41:19, 41:20, 42:25
**Bordman's** [5] - 12:4, 21:6, 25:12, 25:19, 38:5
**boundaries** [1] - 31:2
**Box** [3] - 1:10, 1:24, 44:14
**boy** [1] - 11:10
**bragged** [1] - 28:22
**brief** [3] - 5:22, 9:12, 30:24
**briefed** [1] - 24:12
**briefing** [1] - 5:3
**briefly** [3] - 9:5, 11:13, 27:21
**broken** [1] - 38:6
**burden** [1] - 8:23
**Bureau** [7] - 38:5, 38:9, 38:10, 38:15, 38:20, 39:1, 40:15
**buttocks** [1] - 20:14
**BY** [2] - 11:7, 21:4

## C

**calculate** [1] - 22:24
**calculation** [5] - 6:2, 10:15, 22:21, 23:14, 33:18
**calculations** [1] - 22:19
**call** [2] - 10:24, 24:13
**called** [4] - 11:3, 13:7, 15:3, 17:4
**Canadian** [1] - 18:14
**cap** [2] - 33:3, 35:12
**captures** [1] - 19:5
**care** [3] - 7:12, 36:12, 37:8
**careful** [1] - 32:4
**carefully** [2] - 35:1, 35:4
**Case** [1] - 9:25
**case** [36] - 7:8, 7:24, 10:5, 10:14, 12:3, 12:4, 12:6, 14:12, 22:8, 22:9, 22:12, 22:17, 23:4, 23:17, 23:25, 25:6, 25:8, 25:18, 25:20, 26:15, 27:11, 27:13, 27:18, 27:25, 29:2, 29:7, 29:19, 30:3, 31:4, 33:9, 33:20, 34:17, 38:3, 40:13, 42:1
**cases** [3] - 11:19, 11:21, 24:13
**category** [6] - 8:8, 26:3, 26:5, 26:10, 33:1, 35:10
**Cedar** [4] - 1:10, 1:13, 1:18,

1:24, 11:12, 11:15, 14:17, 44:14
**cellphone** [3] - 12:10, 35:25, 36:4
**Center** [5] - 5:8, 14:2, 14:10, 14:24, 15:9
**certain** [3] - 25:14, 41:22, 42:11
**certainly** [2] - 25:21, 33:7
**Certified** [1] - 1:19, 44:2
**certify** [2] - 44:2, 44:7
**challenged** [1] - 25:5
**challenging** [1] - 27:13
**chance** [1] - 30:14
**change** [4] - 10:14, 10:15, 33:8, 41:3
**Chapter** [1] - 7:15
**characteristics** [3] - 29:10, 31:8, 36:7
**charts** [1] - 33:2
**child** [28] - 3:20, 4:3, 6:21, 7:4, 10:12, 11:18, 11:20, 11:23, 12:1, 12:7, 13:25, 14:9, 14:25, 20:21, 24:5, 25:20, 25:22, 26:21, 26:25, 28:19, 29:1, 29:4, 31:4, 31:5, 33:12, 33:15, 36:5, 36:9
**childhood** [1] - 36:13
**children** [7] - 7:2, 14:7, 27:23, 29:4, 31:25, 32:20, 33:15
**Children** [6] - 5:8, 11:17, 14:3, 14:10, 14:25, 15:10
**Circuit** [1] - 25:7
**circumstances** [3] - 31:3, 35:20, 41:23
**cite** [1] - 22:8
**cited** [1] - 22:17
**claim** [2] - 42:4, 42:6
**class** [1] - 3:20
**classification** [1] - 38:12
**clear** [1] - 31:23
**Clerk** [2] - 40:12, 42:15
**CLERK** [2] - 3:2, 11:5
**close** [1] - 38:11
**Code** [5] - 32:5, 34:4, 35:2, 40:6, 41:11
**collection** [2] - 39:13, 40:23
**combined** [1] - 10:4
**commencing** [1] - 1:18
**commensurate** [1] - 38:11
**comment** [1] - 33:22
**commission** [1] - 7:1
**Commission** [2] - 26:8, 31:18, 35:7
**commit** [1] - 39:6
**committed** [3] - 31:24, 32:21, 38:5
**community** [2] - 14:6, 33:10
**comparison** [1] - 20:21
**Completed** [1] - 1:21

**comply** [2] - 39:4, 39:20
**computation** [1] - 6:18
**computed** [1] - 35:5
**computer** [1] - 44:5
**computer-assisted** [1] - 44:5
**concerning** [1] - 5:7
**concerns** [3] - 6:16, 25:10
**concluded** [1] - 43:5
**concludes** [1] - 43:3
**conclusion** [1] - 41:23
**concurrently** [2] - 4:7, 38:25
**condition** [2] - 34:5, 40:22
**conditionally** [1] - 7:16
**conditions** [17] - 24:23, 25:3, 25:5, 25:8, 25:11, 25:14, 27:22, 27:24, 28:2, 30:23, 30:25, 31:14, 39:5, 39:21, 39:22, 39:24, 40:1
**conduct** [13] - 7:6, 25:19, 27:12, 27:14, 28:10, 28:11, 30:1, 30:3, 31:23, 33:1, 37:6, 37:13, 38:2
**conferences** [1] - 11:18
**confusion** [1] - 38:19
**connected** [1] - 29:19
**consecutively** [3] - 4:8, 4:9, 38:8
**consider** [7] - 22:16, 23:14, 23:15, 24:7, 29:14, 31:2, 34:19
**consideration** [1] - 32:4
**considered** [8] - 31:14, 32:13, 33:17, 33:23, 35:1, 35:4, 37:17, 40:4
**considering** [1] - 24:11
**consistent** [1] - 31:17
**consult** [1] - 42:12
**contact** [3] - 7:2, 18:2, 29:25
**contain** [2] - 13:25, 16:24
**content** [1] - 6:15
**contents** [1] - 6:15
**continue** [2] - 23:11, 41:8
**continues** [2] - 20:18, 39:18
**control** [1] - 7:12
**controlled** [1] - 39:8
**convenient** [1] - 9:18
**convicted** [1] - 39:15
**conviction** [5] - 5:11, 8:11, 35:16, 38:24, 40:4
**convictions** [2] - 26:4, 26:6
**cooperate** [1] - 39:13
**copies** [5] - 5:24, 17:22, 19:24, 19:25, 23:24
**copy** [3] - 6:4, 16:17, 16:20
**corporal** [1] - 18:13
**Corporal** [1] - 18:16
**correct** [9] - 10:19, 17:10, 21:7, 21:8, 21:11, 21:12, 21:14, 21:15, 34:6
**correctional** [2] - 31:13, 37:9

corrections [1] - 5:16
counsel [3] - 3:7, 24:12, 44:9
counseling [3] - 26:20, 26:23, 27:5
count [6] - 5:10, 8:11, 35:16, 38:24, 40:4, 40:6
Count [11] - 3:19, 4:2, 4:7, 4:10, 4:11, 4:20, 12:6, 38:7
Counts [1] - 41:17
counts [4] - 4:23, 41:14, 42:4, 42:5
couple [2] - 24:23, 36:22
course [11] - 4:12, 5:9, 8:19, 8:23, 31:12, 32:14, 32:23, 36:18, 37:10, 37:18, 39:13
COURT [45] - 1:1, 3:13, 3:19, 4:18, 4:22, 4:25, 5:18, 5:22, 6:3, 6:7, 6:9, 6:14, 6:18, 7:25, 8:22, 9:7, 9:9, 9:20, 9:23, 10:6, 10:16, 10:20, 10:23, 10:25, 15:13, 16:18, 16:21, 21:1, 21:19, 21:21, 22:4, 24:10, 24:25, 27:20, 30:13, 30:21, 34:7, 34:18, 34:24, 38:18, 41:18, 42:9, 42:23, 42:25, 43:3
Court [38] - 1:23, 4:6, 4:8, 4:25, 5:9, 6:18, 7:16, 7:17, 8:19, 9:3, 9:19, 10:3, 10:8, 16:16, 22:16, 23:1, 24:7, 24:10, 25:5, 27:10, 30:11, 30:21, 31:2, 32:3, 32:9, 34:20, 34:25, 35:20, 36:20, 37:3, 37:18, 38:4, 40:12, 40:24, 42:15, 42:16, 42:19, 44:13
court [9] - 3:1, 3:15, 4:16, 4:19, 5:2, 29:12, 32:15, 32:21, 34:8
Court's [1] - 33:11
courts [1] - 30:25
CR [2] - 1:5, 10:1
creating [1] - 37:11
credit [1] - 37:24
Crimes [1] - 11:16
crimes [3] - 3:17, 37:7, 39:7
Criminal [1] - 3:2
criminal [12] - 8:4, 8:7, 26:4, 26:9, 32:19, 32:22, 32:24, 32:25, 35:9, 36:10, 36:25, 37:6
critical [1] - 31:10
cross [1] - 21:1
CROSS [1] - 21:3
cross-examination [1] - 21:1
CROSS-EXAMINATION [1] - 21:3
CSR [1] - 1:23, 44:13
current [2] - 5:2, 33:6
custody [4] - 7:11, 38:5, 38:12, 39:1

**D**

danger [1] - 33:10
dangerous [1] - 39:9
days [2] - 41:3, 42:17
deal [1] - 26:24
December [1] - 3:16
decide [1] - 7:18
decision [1] - 30:4
decisions [2] - 29:15, 29:16
decline [3] - 32:12, 33:25, 40:9
Defendant [2] - 1:7, 1:13
defendant [22] - 3:4, 5:17, 7:3, 7:9, 7:12, 9:15, 10:2, 10:3, 10:11, 10:17, 12:3, 12:8, 13:20, 23:18, 23:19, 30:9, 31:23, 37:7, 41:15, 42:3
DEFENDANT [10] - 3:18, 4:17, 4:21, 4:24, 6:6, 6:8, 6:13, 6:17, 30:16, 43:2
defendant's [8] - 13:3, 13:13, 19:14, 22:7, 24:2, 29:10, 30:11, 31:8
defendants [4] - 9:13, 9:15, 10:10, 37:12
Defender's [1] - 1:12
defense [1] - 22:7
definitely [1] - 22:12
deliberate [1] - 30:4
denominator [1] - 22:12
deny [1] - 30:11
Department [2] - 11:12, 14:18
depicted [3] - 18:25, 19:9, 21:13
depiction [1] - 4:3
depictions [7] - 7:6, 28:17, 29:8, 30:6, 35:23, 36:1, 36:5
deprivation [1] - 31:15
deprive [1] - 29:15
describe [2] - 11:13, 20:8
described [1] - 21:6
describes [1] - 20:9
designated [1] - 38:10
destructive [1] - 39:9
detailed [1] - 36:2
determination [2] - 37:15, 42:10
determining [1] - 22:11
deterrence [3] - 26:1, 31:10, 37:6
device [1] - 39:9
diagnosis [1] - 36:17
different [3] - 17:25, 23:24, 29:17
difficult [1] - 24:13
diploma [1] - 6:10
direct [1] - 16:10
DIRECT [1] - 11:6
directed [1] - 39:12

direction [1] - 44:5
directly [1] - 29:19
discharged [1] - 41:7
discretion [1] - 30:25
discuss [1] - 35:3
dismiss [1] - 41:16
dismissed [1] - 41:18
disparities [2] - 37:12, 37:17
disposition [3] - 24:18, 34:20, 35:1
disputed [1] - 30:22
disputing [2] - 8:19, 27:7
dissemination [3] - 23:1, 23:6, 23:11
distribute [1] - 29:23, 30:6
distributed [2] - 23:23, 31:5
distribution [5] - 7:4, 23:16, 23:17, 28:12, 40:13
DISTRICT [2] - 1:1, 1:1
District [8] - 1:23, 10:1, 10:3, 40:12, 41:3, 42:16, 42:17, 44:13
district [2] - 30:25, 39:3
divide [2] - 10:12, 22:25
DNA [1] - 39:13
Document [2] - 5:1, 30:24
done [2] - 5:3, 24:2
double [1] - 42:5
down [2] - 8:6, 38:6
downward [11] - 25:17, 25:18, 27:18, 30:12, 32:2, 32:3, 32:11, 32:12, 32:13, 33:24
draw [1] - 37:13
drive [2] - 12:23, 12:24
Dropbox [12] - 12:7, 12:8, 12:10, 12:15, 13:3, 13:5, 13:13, 13:21, 19:14, 21:6, 29:5, 29:7
due [4] - 22:25, 23:1, 25:9, 40:23
duly [1] - 11:3
duplicity [1] - 42:4
during [2] - 31:24, 36:18

**E**

E-L-L [1] - 11:10
e-mail [2] - 18:5, 18:7
education [2] - 31:12, 37:8
effect [1] - 33:14
effective [1] - 37:9
egregious [1] - 28:5
Eighth [1] - 25:7
either [2] - 4:7, 26:6
employed [3] - 11:11, 44:8, 44:9
employee [1] - 44:8
employment [1] - 36:25
end [2] - 7:18, 20:19
enforcement [2] - 14:6, 18:9

engaged [1] - 7:4
enhancements [1] - 7:15
entered [1] - 41:21
especially [2] - 25:10, 26:2
establish [1] - 40:24
evaluating [1] - 32:10
evidence [5] - 23:4, 23:17, 24:11, 26:19, 33:19
EXAMINATION [2] - 11:6, 21:3
examination [1] - 21:1
examine [1] - 32:9
examined [1] - 11:4
examiner [2] - 14:14, 18:18
exceed [1] - 40:17
exceeded [1] - 42:6
except [1] - 35:11
excuse [3] - 25:15, 25:20, 25:21
exhibit [2] - 9:16, 16:17
Exhibit [9] - 2:8, 2:9, 2:10, 9:3, 9:12, 15:15, 16:10, 16:24, 19:17
exhibits [2] - 5:4, 9:2
EXHIBITS [1] - 2:6
Exhibits [3] - 9:2, 9:5, 9:10
existed [1] - 41:23
experience [2] - 11:14, 37:13
expert [1] - 23:4
explain [1] - 12:22
explicit [2] - 29:22, 35:23
exploit [1] - 30:5
exploitation [6] - 3:20, 6:21, 11:19, 11:20, 25:22, 27:23
Exploited [2] - 5:8, 14:3, 14:10, 14:24, 15:10
exploited [1] - 14:7
explored [1] - 36:20
exposure [1] - 4:8
extent [1] - 26:22
extreme [1] - 33:10
extremely [1] - 31:11

**F**

face [1] - 19:6
facility [1] - 38:11
fact [4] - 26:2, 26:7, 32:17, 33:17
factor [8] - 22:22, 22:23, 23:25, 29:2, 30:2, 32:9, 35:2, 35:3
factors [6] - 22:16, 23:13, 23:18, 23:21, 30:9, 32:4
facts [1] - 27:25
fair [1] - 6:12
Falls [1] - 38:13
family [1] - 38:11
far [2] - 15:18, 34:10
father [1] - 36:9
FCRR [2] - 1:23, 44:13

**federal** [4] - 3:16, 37:14, 39:6, 39:16
**Federal** [1] - 1:12
**feel** [1] - 26:11
**felon** [1] - 39:15
**felony** [1] - 3:21
**female** [2] - 20:9
**few** [2] - 32:18, 33:22
**figure** [1] - 22:24
**file** [3] - 12:19, 42:14
**filed** [2] - 9:2, 22:2
**filename** [2] - 17:11, 19:11
**filenames** [5] - 13:18, 13:20, 14:21, 19:13, 19:16
**files** [10] - 12:15, 12:19, 13:15, 13:18, 13:23, 13:25, 14:21, 14:25, 15:3, 15:6
**filing** [1] - 42:17
**final** [1] - 34:20
**Financial** [1] - 40:15
**financial** [3] - 34:5, 40:20, 41:5
**financially** [1] - 44:9
**find** [5] - 24:14, 32:11, 32:21, 33:24, 40:7
**findings** [3] - 30:22, 34:21, 34:25
**finds** [1] - 37:18
**fine** [5] - 3:25, 4:12, 8:12, 35:17, 40:2
**fines** [1] - 40:25
**firearm** [2] - 39:8, 39:17
**first** [11] - 6:20, 8:25, 11:3, 16:3, 17:21, 17:22, 18:24, 19:2, 28:13, 30:22, 38:10
**First** [1] - 25:13
**flash** [2] - 12:23, 12:24
**focus** [1] - 26:22
**focused** [1] - 26:23
**folder** [8] - 12:24, 12:25, 13:1, 13:2, 13:3, 13:7, 17:2, 17:4
**folders** [9] - 13:7, 13:10, 13:12, 13:13, 13:16, 14:19, 17:25, 21:5, 23:24
**followed** [1] - 3:23
**following** [1] - 3:1
**follows** [1] - 11:4
**FOR** [1] - 1:1
**Force** [1] - 11:17
**foregoing** [1] - 44:5
**forensic** [2] - 14:14, 18:18
**form** [1] - 19:12
**formula** [1] - 23:12
**forth** [5] - 27:2, 27:17, 30:24, 31:9, 39:21
**forward** [3] - 11:1, 26:25, 34:20
**forward-looking** [1] - 26:25
**foster** [1] - 36:12
**four** [2] - 28:17, 29:17

**frankly** [1] - 33:18
**front** [1] - 16:17
**fully** [2] - 27:11, 27:15
**funds** [1] - 40:17
**futile** [1] - 33:20
**future** [1] - 27:2

## G

**general** [1] - 42:8
**get** [5] - 12:12, 26:17, 28:21, 29:23, 42:10
**gets** [3] - 22:14, 23:7, 37:24
**getting** [2] - 27:4, 28:17
**give** [3] - 7:18, 33:21
**given** [3] - 30:7, 33:8, 38:2
**gives** [1] - 7:14
**giving** [2] - 19:11, 19:12
**glass** [1] - 20:20
**goal** [1] - 32:5
**goals** [3] - 26:12, 32:8, 37:20
**Google** [2] - 29:5
**govern** [1] - 23:22
**government** [9] - 7:21, 7:23, 8:21, 10:22, 22:18, 22:19, 28:3, 41:16, 41:21
**Government** [1] - 15:15
**government's** [5] - 10:9, 10:14, 10:16, 22:2, 32:14
**graduate** [1] - 36:24
**graduated** [1] - 11:15
**grant** [2] - 7:20, 35:8
**grants** [1] - 7:16
**graphic** [2] - 20:22, 20:23
**greater** [3] - 31:15, 32:7, 37:19
**group** [3] - 6:20, 29:2, 36:12
**Group** [1] - 6:20
**guardian** [1] - 7:10
**guess** [2] - 21:22, 26:23
**guideline** [6] - 6:2, 6:19, 24:19, 30:7, 35:5, 35:14
**guidelines** [10] - 8:2, 8:8, 23:22, 23:23, 26:16, 32:25, 35:6, 35:11, 35:15, 37:15
**guilty** [7] - 3:16, 3:19, 4:2, 4:16, 4:20, 4:22, 37:13

## H

**half** [4] - 28:7, 28:8, 35:24
**hand** [3] - 14:5, 44:10
**hand-in-hand** [1] - 14:5
**handed** [1] - 15:14
**handle** [1] - 42:21
**hands** [1] - 20:11
**happens** [2] - 8:5, 20:12
**happy** [1] - 24:20
**harm** [5] - 22:25, 23:10, 24:2, 24:4, 24:6

**hazard** [1] - 26:22
**health** [1] - 36:17
**hear** [2] - 8:24, 24:20
**heard** [2] - 39:25
**HEARING** [1] - 1:15
**hearing** [6] - 7:18, 41:24, 43:3, 44:3, 44:4, 44:6
**held** [2] - 3:1, 44:3
**HELD** [1] - 1:16
**help** [1] - 14:6
**helpful** [1] - 37:16
**helping** [1] - 26:23
**hereby** [1] - 44:2
**hereto** [1] - 44:9
**heretofore** [1] - 44:3
**high** [5] - 6:9, 30:1, 31:11, 33:11, 36:24
**himself** [1] - 28:20
**history** [16] - 8:4, 8:8, 26:9, 29:10, 29:13, 29:14, 31:8, 32:19, 32:21, 32:23, 32:24, 32:25, 35:10, 36:7, 36:25
**hold** [1] - 20:16
**home** [1] - 36:12
**HON** [1] - 1:16
**Honor** [30] - 5:14, 5:21, 7:23, 8:18, 9:1, 9:11, 9:22, 9:24, 10:8, 10:19, 15:12, 16:16, 21:18, 21:25, 22:6, 23:15, 24:21, 24:22, 25:2, 25:13, 27:3, 27:16, 27:21, 34:6, 34:13, 34:22, 38:17, 41:17, 42:1, 42:22
**Honorable** [1] - 44:3
**hopes** [1] - 28:17
**hours** [1] - 38:25
**hurt** [1] - 29:16

## I

**identical** [5] - 17:17, 17:20, 19:3, 19:4, 19:24
**identified** [4] - 5:7, 10:18, 19:20, 35:19
**identify** [3] - 14:6, 18:25, 19:8
**Ilich** [1] - 9:25
**ILICH** [1] - 9:25
**illegally** [1] - 39:7
**image** [3] - 13:15, 13:18, 28:9
**images** [17] - 11:23, 12:1, 14:8, 14:19, 15:6, 18:15, 18:24, 23:1, 23:6, 23:8, 23:20, 23:21, 23:23, 24:5, 28:12, 28:23, 29:6
**immediately** [1] - 41:12
**impact** [2] - 34:9, 34:16
**impinge** [1] - 25:11
**important** [2] - 26:14, 27:6
**impose** [9] - 8:19, 8:20, 25:9,

25:14, 30:25, 31:15, 35:13, 37:3, 40:1
**imposed** [1] - 40:2
**imposing** [2] - 31:25, 37:21
**imposition** [2] - 24:16, 25:7
**imprisoned** [1] - 38:6
**imprisonment** [3] - 38:22, 40:21
**IN** [2] - 1:1, 44:10
**inappropriate** [1] - 30:17
**incarcerated** [2] - 36:16, 40:14
**incarceration** [1] - 33:9
**include** [8] - 15:3, 15:17, 16:3, 16:7, 18:2, 18:5, 19:6, 23:21
**included** [6] - 17:12, 19:13, 28:11, 28:12, 29:6, 29:7
**including** [5] - 4:3, 27:25, 29:8, 29:16, 31:2
**increase** [1] - 23:11
**independent** [1] - 29:15
**INDEX** [1] - 2:1
**indicated** [2] - 34:2, 44:3
**indigent** [1] - 5:17
**individualized** [1] - 27:24
**individuals** [3] - 29:18, 29:25, 32:19
**infant** [1] - 7:7
**infants** [1] - 29:9
**information** [8] - 5:7, 15:18, 15:19, 16:5, 16:7, 18:2, 21:9, 27:17
**inquiry** [1] - 27:25
**inserts** [1] - 20:17
**inside** [5] - 12:23, 12:25, 13:1, 13:7, 13:15
**installed** [1] - 12:11
**instance** [1] - 8:5
**instances** [1] - 29:17
**instead** [1] - 9:16
**institution** [1] - 40:18
**intensive** [2] - 26:17, 33:5
**interest** [2] - 29:3, 31:6
**interested** [1] - 44:9
**internet** [4] - 23:8, 23:11, 36:1, 36:4
**Internet** [1] - 11:16
**investigated** [1] - 11:20
**investigation** [9] - 5:1, 5:6, 5:20, 6:4, 14:8, 31:9, 31:22, 36:3, 39:23
**investigative** [1] - 18:3
**investigator** [3] - 14:17, 18:20, 19:8
**Investigator** [3] - 9:4, 16:23, 21:5
**invitation** [1] - 32:12
**involve** [1] - 31:15
**involved** [5] - 6:24, 7:10, 11:17, 23:18, 23:19

**involves** [1] - 12:6
**involving** [1] - 4:3
**IOWA** [1] - 1:1
**Iowa** [10] - 1:10, 1:13, 1:18, 1:24, 38:15, 40:12, 41:3, 42:17, 44:2, 44:14
**issue** [5] - 8:24, 22:1, 23:22, 24:22, 25:17
**issues** [6] - 5:4, 23:16, 30:22, 42:2, 42:8

## J

**jar** [1] - 20:20
**jeopardy** [1] - 42:5
**JILL** [1] - 1:12
**Jill** [1] - 3:11
**Joe** [2] - 14:17, 18:20
**JOHNSTON** [11] - 3:11, 5:21, 5:24, 8:18, 9:8, 9:22, 16:20, 21:2, 21:4, 21:16, 21:25, 24:21, 25:2, 34:22, 38:17, 42:24
**jOHNSTON** [1] - 1:12
**Johnston** [8] - 3:11, 5:18, 21:22, 24:18, 33:24, 34:18, 38:13, 42:23
**joined** [1] - 11:16
**JOSHUA** [1] - 11:2
**Joshua** [3] - 2:3, 10:24, 11:10
**judge** [1] - 37:14
**judgment** [3] - 38:4, 39:5, 42:18
**July** [3] - 28:11, 35:22, 44:11
**June** [2] - 1:17, 9:24
**justifies** [1] - 27:24
**juvenile** [1] - 37:1

## K

**keep** [4] - 23:8, 23:9, 41:9
**Kik** [3] - 29:2, 35:25, 36:4
**KIK** [1] - 35:25
**kinds** [1] - 37:17
**knees** [1] - 20:11
**knowingly** [1] - 7:3
**known** [4] - 14:25, 19:20, 21:10, 36:25
**Korth** [3] - 3:5, 36:2, 38:18
**Kyocera** [1] - 12:9

## L

**lack** [1] - 32:23
**last** [4] - 9:15, 11:8, 18:22, 36:22
**law** [5] - 14:6, 18:9, 25:6, 37:5, 39:17
**least** [2] - 25:11, 40:19

**left** [2] - 17:15, 35:9
**legal** [2] - 7:10, 38:14
**legs** [1] - 20:16
**lengthy** [1] - 30:8
**less** [1] - 20:22
**level** [6] - 6:22, 7:14, 7:16, 7:22, 7:24, 8:2, 8:3, 8:6, 35:9
**levels** [1] - 6:23, 7:1, 7:3, 7:5, 7:9, 7:21, 8:1
**liberty** [1] - 31:16
**life** [9] - 3:24, 4:10, 8:3, 8:9, 8:11, 35:11, 35:15, 39:19
**light** [1] - 26:2
**LINDA** [1] - 1:16
**Linda** [1] - 44:3
**list** [1] - 16:11
**listed** [7] - 16:23, 17:5, 19:9, 19:17, 28:13, 28:14, 28:24
**listing** [1] - 16:9
**lists** [3] - 9:12, 9:14, 38:13
**local** [1] - 39:7
**locking** [1] - 27:6
**look** [1] - 13:23
**looking** [2] - 16:18, 26:25
**Loreng** [2] - 22:8, 22:9, 22:12

## M

**machine** [1] - 1:20
**made** [7] - 22:12, 24:12, 30:3, 32:10, 32:18, 33:23, 40:11
**mail** [2] - 18:5, 18:7
**mailing** [2] - 41:4, 41:10
**make** [13] - 3:7, 5:22, 9:17, 24:16, 29:15, 30:19, 30:22, 33:13, 34:25, 37:11, 40:10, 40:14, 42:10
**makes** [1] - 33:16
**making** [2] - 6:10, 37:14
**man** [1] - 28:13
**Management** [1] - 38:21
**mandatory** [1] - 4:11
**manner** [1] - 37:10
**marijuana** [3] - 31:21, 31:24, 36:21
**MARK** [1] - 1:10
**Mark** [1] - 3:9
**Marshal's** [1] - 41:13
**masochistic** [1] - 7:6
**material** [2] - 7:5, 25:12
**materials** [2] - 21:23, 32:16
**math** [1] - 10:8
**Matter** [1] - 3:2
**maximum** [4] - 4:8, 8:9, 30:8, 35:8, 42:7
**mean** [2] - 22:14, 27:1
**means** [4] - 28:20, 39:16, 44:4
**medical** [1] - 37:8

**medications** [1] - 36:16
**memo** [6] - 10:9, 10:15, 22:24, 24:8, 25:4, 27:17
**mental** [1] - 36:17
**mentioned** [1] - 17:4
**messenger** [2] - 35:25, 36:4
**met** [1] - 5:25
**MICHAEL** [1] - 1:6
**Michael** [4] - 3:3, 12:3, 38:4, 41:19
**mind** [1] - 33:11
**minimal** [1] - 36:24
**minimum** [2] - 3:22, 4:11
**minor** [4] - 4:4, 7:10, 7:11
**minors** [1] - 6:24
**minute** [1] - 16:21
**minutes** [1] - 20:3
**misdemeanor** [1] - 37:2
**missing** [1] - 14:7
**Missing** [5] - 5:8, 14:2, 14:10, 14:24, 15:9
**moment** [1] - 37:23
**money** [1] - 40:2
**monthly** [2] - 40:14, 40:16
**months** [5] - 35:13, 36:22, 38:6, 38:7
**morning** [1] - 10:25
**most** [3] - 26:14, 30:2, 37:9
**motion** [2] - 28:3, 30:11
**Mounted** [1] - 18:14
**move** [2] - 7:24, 24:17
**moves** [1] - 41:16
**moving** [1] - 7:21
**MR** [22] - 3:9, 5:14, 7:23, 9:1, 9:11, 9:24, 10:7, 10:19, 10:22, 10:24, 11:7, 15:12, 16:16, 20:24, 21:18, 22:6, 27:21, 34:6, 34:13, 41:16, 42:1, 42:22
**MS** [16] - 3:11, 5:21, 5:24, 8:18, 9:8, 9:22, 16:20, 21:2, 21:4, 21:16, 21:25, 24:21, 25:2, 34:22, 38:17, 42:24
**multiplicity** [1] - 42:4
**Murray** [5] - 1:19, 1:23, 44:2, 44:12, 44:13
**must** [13] - 31:15, 37:3, 39:2, 39:4, 39:6, 39:7, 39:8, 39:10, 39:13, 39:20, 40:14, 40:21, 41:1

## N

**naked** [1] - 20:9
**name** [6] - 11:8, 11:9, 13:2, 19:12, 19:13
**names** [3] - 13:10, 13:12, 13:13
**National** [5] - 5:8, 14:2, 14:10, 14:24, 15:9
**nature** [5] - 24:1, 26:8, 28:5,

31:3, 35:20
**NCMEC** [4] - 15:19, 15:22, 15:24, 16:4
**NCMEC's** [1] - 15:19
**NDIA** [1] - 44:13
**necessary** [4] - 31:16, 32:7, 37:20, 38:1
**need** [7] - 27:7, 27:22, 31:13, 34:1, 34:19, 37:10, 42:21
**needed** [1] - 37:8
**needs** [3] - 26:18, 31:13, 38:12
**nevertheless** [1] - 22:20
**noninstitution** [1] - 40:18
**nonprofit** [1] - 14:4
**Northern** [3] - 40:12, 41:2, 42:16
**NORTHERN** [1] - 1:1
**note** [7] - 10:8, 22:7, 22:17, 23:3, 23:6, 23:25, 24:22
**noted** [1] - 29:17
**nothing** [5] - 21:18, 21:25, 23:3, 33:16, 42:24
**notice** [1] - 42:15
**notifications** [1] - 23:9
**notified** [1] - 34:11
**notify** [1] - 41:2
**Number** [2] - 3:2, 9:25
**number** [2] - 10:13, 22:14
**numerical** [1] - 23:14
**numerically** [1] - 17:20

## O

**oath** [1] - 11:1
**objected** [1] - 39:24
**objection** [5] - 6:2, 9:7, 9:8, 9:20, 31:19
**objections** [3] - 5:15, 27:12, 40:1
**obligations** [2] - 40:20, 41:5
**observed** [2] - 12:10, 20:22
**obtained** [1] - 29:22
**obviously** [3] - 26:18, 31:10, 34:7
**occurred** [2] - 28:7, 36:23
**occurs** [1] - 41:4
**October** [1] - 12:18
**OF** [2] - 1:1, 1:3
**offend** [1] - 32:20
**offender** [7] - 26:3, 26:5, 26:10, 26:17, 33:5, 33:7, 39:10
**Offender** [1] - 38:21
**offense** [18] - 4:5, 6:21, 7:11, 7:14, 8:1, 8:3, 8:6, 27:13, 28:6, 31:3, 31:23, 33:1, 34:8, 35:9, 35:21, 37:4, 38:2, 41:1
**offenses** [3] - 31:25, 32:22, 37:2
**offer** [2] - 5:5, 9:5

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*Unpurchased compute copy of transcript.*
Case 1:16-cr-00081-LRR-CJW Document 65-1 Filed 07/11/17 Page 49 of 52

**office** [2] - 39:2, 40:23
**Office** [4] - 1:12, 3:5, 3:10, 41:8
**officer** [1] - 9:4
**Officer** [4] - 3:5, 11:5, 36:2, 38:18
**old** [4] - 19:22, 20:10, 26:6, 35:24
**once** [1] - 36:21
**one** [19] - 6:23, 7:2, 10:22, 19:9, 20:13, 22:15, 22:21, 22:23, 23:13, 23:15, 23:18, 25:11, 28:7, 28:9, 32:1, 34:14, 39:15, 42:19
**one-and-a-half** [1] - 28:7
**open** [1] - 3:1
**openly** [1] - 29:3
**opportunity** [2] - 5:12, 33:8
**option/discretion** [1] - 23:2
**oral** [1] - 32:13
**order** [5] - 22:9, 29:23, 39:5, 40:10, 42:18
**ordered** [4] - 9:13, 10:3, 40:5, 41:1
**Ordered** [1] - 1:21
**ordinarily** [1] - 35:10
**organization** [1] - 14:4
**organized** [1] - 12:19
**original** [5] - 15:8, 22:23, 22:25, 23:5, 23:7
**others's** [1] - 29:21
**otherwise** [1] - 7:11
**outlined** [3] - 24:8, 28:10, 29:11
**outrageous** [1] - 33:2
**overbreadth** [1] - 25:10
**overbroad** [1] - 25:5
**overrule** [2] - 31:19, 39:25
**overwhelming** [1] - 33:19
**owe** [2] - 40:20, 40:25
**own** [2] - 33:12, 37:13

**P**

**Page** [8] - 6:19, 10:9, 10:15, 16:10, 16:24, 18:2, 19:17, 30:24
**page** [1] - 16:11
**pages** [7] - 15:8, 15:11, 15:21, 15:24, 16:1, 16:2, 16:3
**paid** [2] - 41:6, 41:9
**Paragraph** [7] - 6:21, 7:15, 28:15, 28:16, 28:24, 31:20
**Paragraphs** [3] - 27:25, 28:14, 39:23
**parent** [1] - 7:9
**parentheses** [1] - 38:19
**parents** [1] - 36:10
**Paroline** [1] - 22:8
**part** [4] - 21:10, 22:10, 29:13, 41:1

**participate** [1] - 38:20
**parties** [5] - 5:3, 9:17, 23:16, 44:8, 44:9
**passively** [1] - 29:21
**past** [1] - 26:20
**Pat** [1] - 3:5
**path** [4] - 17:1, 17:5, 17:12, 17:14
**paths** [1] - 16:24
**Patrice** [5] - 1:19, 1:23, 44:2, 44:12, 44:13
**pay** [9] - 8:15, 9:13, 10:4, 10:17, 40:3, 40:5, 40:8, 40:19, 40:22
**payment** [1] - 40:24
**payments** [3] - 40:11, 40:14, 40:17
**penalty** [2] - 4:5, 42:7
**penetrate** [1] - 20:18
**penetrated** [1] - 20:11
**penetration** [1] - 29:8
**penis** [2] - 20:16, 20:17
**Pennsylvania** [1] - 10:1
**people** [3] - 13:5, 22:13, 29:16
**per** [1] - 40:19
**percent** [1] - 40:17
**percentage** [2] - 22:25, 23:10
**percentages** [1] - 23:5
**period** [2] - 30:4, 31:24
**person** [12] - 5:25, 26:5, 28:15, 28:16, 28:17, 29:20, 29:24, 30:19, 31:4, 32:21, 39:2
**personally** [1] - 3:13
**pertaining** [1] - 11:18
**phone** [2] - 12:11, 29:4
**physical** [1] - 36:15
**Pia** [9] - 10:18, 19:20, 19:22, 21:11, 21:14, 23:20, 24:15, 35:19, 40:11
**picked** [1] - 33:22
**pictures** [2] - 29:22, 29:23
**pieces** [1] - 5:6
**place** [2] - 44:3, 44:6
**placements** [2] - 36:12, 36:13
**Plaintiff** [1] - 1:4
**plea** [4] - 4:16, 4:22, 41:21, 41:24
**plead** [1] - 42:5
**pleading** [1] - 3:16
**pleas** [1] - 4:20
**pled** [2] - 3:19, 4:2
**plus** [2] - 10:10, 10:11
**point** [3] - 20:13, 22:11, 22:24
**points** [2] - 26:7, 26:9
**Police** [4] - 11:12, 11:15, 14:18, 18:14

**policy** [2] - 31:18, 35:6
**pornography** [19] - 4:3, 7:4, 10:3, 11:24, 12:7, 13:25, 14:9, 15:1, 20:21, 21:7, 24:5, 25:21, 28:19, 29:1, 29:4, 31:4, 31:5, 31:7, 36:6
**portion** [2] - 40:20, 41:5
**portrayed** [1] - 7:5
**position** [2] - 8:17, 10:17
**possess** [3] - 39:7, 39:8, 39:17
**possessed** [1] - 29:4
**possessing** [1] - 25:20
**possession** [4] - 4:2, 10:2, 12:6, 24:3
**possible** [1] - 3:24
**posted** [1] - 28:9
**potential** [1] - 5:10
**potentially** [1] - 7:25
**power** [1] - 32:3
**pre** [1] - 22:8
**pre-Paroline** [1] - 22:8
**prefer** [1] - 38:16
**preparing** [1] - 9:16
**preponderance** [1] - 24:11
**prepubescent** [2] - 4:4, 29:7
**present** [2] - 3:4, 3:14
**presented** [1] - 34:15
**presentence** [11] - 5:1, 5:6, 5:15, 5:19, 5:25, 6:4, 25:16, 31:9, 31:22, 36:2, 39:22
**previously** [2] - 9:2, 10:10
**primary** [3] - 28:5, 29:6, 34:16
**print** [1] - 44:4
**prison** [9] - 3:22, 3:23, 4:6, 4:7, 25:23, 26:15, 36:10, 36:19, 37:25
**Prisons** [4] - 38:6, 38:9, 38:15, 39:1
**Prisons'** [3] - 38:10, 38:21, 40:15
**Private** [6] - 12:24, 13:2, 13:8, 17:5, 17:8, 17:9
**Probation** [1] - 3:5
**probation** [7] - 3:24, 4:10, 8:11, 35:16, 39:2, 39:12, 40:22
**problems** [1] - 36:15
**proceed** [2] - 9:18, 10:23
**proceeding** [1] - 30:14
**Proceedings** [1] - 43:5
**proceedings** [3] - 3:1, 44:4, 44:6
**produced** [2] - 28:12, 31:4, 35:22
**producing** [2] - 21:10, 28:19
**production** [2] - 23:19, 23:20
**Program** [2] - 38:21, 40:16
**prohibition** [1] - 39:18
**promote** [1] - 37:4

**protect** [3] - 27:23, 37:6, 38:1
**protected** [1] - 25:12
**protection** [1] - 31:12
**provide** [3] - 26:1, 36:20, 37:7
**provided** [2] - 12:19, 34:3
**providers** [1] - 14:5
**provisions** [4] - 3:21, 4:15, 33:4, 35:12
**proximity** [1] - 38:11
**PSIR** [5] - 28:1, 28:10, 28:13, 29:13, 29:16
**Public** [1] - 1:12
**public** [3] - 31:12, 37:6, 38:1
**punished** [1] - 27:7
**punishment** [2] - 26:1, 37:5
**purpose** [1] - 4:19
**purposes** [2] - 19:19, 31:17
**pursuant** [2] - 40:6, 41:11
**pursue** [2] - 40:23, 41:8
**pursuing** [1] - 34:4
**put** [2] - 27:5, 38:18

**Q**

**quarter** [1] - 40:19
**questions** [3] - 20:25, 21:16, 43:1

**R**

**range** [3] - 6:2, 24:19, 35:5
**Rapids** [8] - 1:10, 1:13, 1:18, 1:24, 11:12, 11:15, 14:17, 44:14
**rare** [1] - 8:5
**rather** [1] - 26:15
**RC** [1] - 2:2
**RD** [1] - 2:2
**reach** [1] - 29:25
**read** [7] - 4:25, 5:9, 6:5, 6:7, 6:10, 21:23, 22:6
**READE** [1] - 1:16
**Reade** [1] - 44:3
**reading** [3] - 6:12, 19:11, 33:18
**ready** [4] - 24:10, 24:17, 30:21, 34:25
**really** [1] - 7:18
**reason** [5] - 23:10, 26:10, 27:14, 28:5, 39:17
**reasonably** [1] - 31:16
**reasons** [3] - 24:8, 25:13, 27:16
**receive** [5] - 14:8, 18:9, 18:12, 35:10, 36:5
**received** [11] - 4:25, 5:14, 9:9, 9:10, 12:23, 13:12, 14:22, 15:9, 18:21, 34:14, 34:15

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:16-cr-00081-LRR-CJW Document 65-1 Filed 02/14/17 Page 50 of 52
*Unofficial, incomplete copy of the transcript*

**receiving** [1] - 6:4
**recidivate** [2] - 31:11, 33:11
**recognize** [1] - 15:15
**recommend** [2] - 38:9, 38:20
**recommendation** [1] - 10:14
**recommended** [2] - 25:16, 26:16
**record** [6] - 3:8, 5:22, 19:19, 26:4, 33:16, 44:6
**recording** [1] - 30:5
**records** [3] - 5:2, 29:12, 37:12
**Redacted** [1] - 1:6
**redacted** [2] - 18:15, 18:24
**reduce** [1] - 23:2
**reduced** [1] - 44:4
**reflect** [1] - 37:4
**regard** [1] - 30:23
**regarding** [4] - 5:16, 24:23, 25:17, 29:10
**regardless** [1] - 8:4
**register** [1] - 39:10
**registration** [1] - 39:11
**related** [1] - 44:7
**relationship** [2] - 33:14, 36:14
**relative** [2] - 7:10, 44:8
**release** [19] - 3:23, 4:10, 8:10, 24:24, 25:4, 25:15, 27:22, 31:1, 31:20, 35:14, 36:19, 37:22, 37:25, 38:22, 38:23, 39:1, 39:4, 39:20, 40:21
**released** [1] - 39:3
**relevant** [1] - 16:7
**remain** [2] - 31:17, 41:5
**remanded** [1] - 41:12
**remember** [2] - 4:14, 6:3
**reoffend** [1] - 30:1
**repeatedly** [1] - 28:25
**report** [25] - 5:1, 5:6, 5:13, 5:15, 5:20, 5:25, 6:1, 6:4, 6:11, 6:16, 6:20, 14:25, 15:8, 15:19, 15:22, 15:24, 16:4, 25:16, 31:9, 31:22, 33:18, 36:3, 39:2, 39:23
**reported** [3] - 1:19, 33:12, 44:3
**reportedly** [1] - 36:23
**Reporter** [2] - 1:20, 44:2
**reports** [5] - 36:12, 36:13, 36:15, 36:17, 36:21
**represent** [1] - 42:20
**representative** [1] - 34:12
**represented** [1] - 10:4
**representing** [1] - 3:4
**request** [10] - 10:21, 15:19, 18:22, 22:2, 24:8, 30:11, 32:2, 34:14, 34:15, 40:24
**requested** [3] - 8:21, 22:20, 25:15

**requests** [2] - 20:13, 29:21
**required** [1] - 31:2
**reside** [1] - 39:11
**residence** [2] - 41:4, 41:10
**Residential** [1] - 38:21
**resistance** [1] - 32:15
**resists** [1] - 28:3
**resources** [1] - 40:19
**respect** [1] - 37:4
**respectfully** [1] - 30:10
**responds** [1] - 29:21
**response** [4] - 18:9, 18:12, 22:2, 22:7
**responsibility** [7] - 7:17, 7:19, 27:11, 27:15, 33:17, 33:21, 35:8
**Responsibility** [1] - 40:16
**rest** [2] - 35:3, 39:18
**restitution** [26] - 3:25, 4:12, 8:12, 8:15, 8:20, 8:21, 8:22, 8:24, 9:13, 10:17, 18:22, 19:19, 22:1, 22:3, 22:9, 22:13, 22:15, 22:20, 24:9, 24:14, 34:14, 34:16, 35:18, 40:10, 41:1, 41:6
**resulting** [1] - 10:13
**results** [1] - 8:1
**reviewed** [1] - 5:15
**reviewing** [1] - 6:1
**rights** [2] - 41:24, 42:13
**risk** [3] - 30:1, 31:11, 33:11
**RMR** [1] - 1:23, 44:13
**Robin** [1] - 18:13
**Ronald** [1] - 9:25
**Royal** [1] - 18:13
**RPR** [2] - 1:23, 44:13
**rubs** [1] - 20:16
**rule** [1] - 24:10
**run** [2] - 4:6, 4:9
**running** [1] - 38:25

## S

**S.E** [5] - 1:10, 1:12, 1:18, 1:24, 44:14
**sadistic** [1] - 7:6
**salvation** [1] - 33:3
**sample** [1] - 39:14
**satisfying** [1] - 28:20
**saving** [1] - 33:3
**schedule** [1] - 40:24
**Schmitz** [2] - 14:17, 18:20
**school** [2] - 6:9, 36:24
**score** [2] - 26:7, 26:9
**scores** [2] - 7:13, 32:25
**screen** [1] - 19:5
**seal** [1] - 9:6
**search** [2] - 12:9, 12:12
**second** [1] - 19:9
**secondly** [1] - 28:15
**seconds** [1] - 20:3

**Section** [5] - 32:5, 34:4, 35:2, 40:7, 41:11
**section** [2] - 31:23, 39:22
**security** [1] - 38:12
**see** [1] - 6:9
**self** [1] - 36:21
**self-reports** [1] - 36:21
**send** [7] - 12:15, 14:9, 14:19, 14:25, 18:15, 36:1, 36:5
**sent** [4] - 5:24, 15:18, 19:5, 28:16
**sentence** [28] - 6:19, 8:3, 8:9, 8:10, 24:16, 24:19, 25:23, 25:24, 25:25, 26:11, 26:15, 27:8, 27:9, 28:4, 30:7, 30:8, 30:10, 32:6, 35:11, 35:12, 35:14, 37:3, 37:11, 37:17, 37:19, 37:21, 37:23, 42:6
**sentenced** [2] - 4:19, 10:2
**sentences** [1] - 37:18
**Sentencing** [3] - 26:8, 31:18, 35:7
**SENTENCING** [1] - 1:15
**sentencing** [14] - 3:4, 3:21, 8:2, 8:7, 26:13, 27:17, 32:6, 32:8, 33:2, 35:5, 35:6, 37:20, 41:23, 42:12
**separate** [1] - 14:19
**series** [5] - 9:14, 15:1, 15:3, 16:8, 16:11
**seriousness** [1] - 37:4
**served** [1] - 38:8
**Service** [1] - 41:13
**set** [5] - 27:17, 31:8, 39:5, 39:21, 44:10
**sets** [1] - 30:24
**Seventh** [4] - 1:10, 1:17, 1:24, 44:14
**several** [3] - 11:18, 12:25, 20:12
**severe** [2] - 24:3, 38:2
**severity** [1] - 25:19
**Sex** [1] - 38:21
**sex** [5] - 7:2, 26:17, 33:5, 33:6, 39:10
**sexual** [9] - 3:20, 6:20, 7:2, 11:19, 11:20, 26:24, 28:11, 28:22, 29:3
**sexually** [4] - 14:7, 28:20, 29:22, 35:22
**shall** [1] - 40:11
**short** [1] - 25:24
**shortened** [1] - 19:12
**Shorthand** [2] - 1:19, 44:2
**shorthand** [2] - 1:20, 44:4
**show** [2] - 9:4, 29:20
**shows** [4] - 17:2, 20:8, 20:20, 30:1
**side** [1] - 17:16
**significance** [1] - 32:23
**significant** [1] - 30:2

**similar** [2] - 37:12, 37:13
**simply** [1] - 27:6
**single** [1] - 36:8
**sisters** [1] - 36:14
**situation** [1] - 27:4
**smaller** [1] - 22:14
**sorry** [2] - 16:22, 30:18
**special** [13] - 4:1, 4:13, 5:10, 5:16, 8:13, 27:22, 34:2, 35:17, 39:21, 40:3, 40:5, 40:8
**specific** [3] - 15:21, 42:2
**specify** [1] - 38:14
**spell** [1] - 11:8
**spread** [2] - 20:14
**squatting** [1] - 20:20
**stand** [1] - 11:5
**standard** [1] - 39:4
**standards** [1] - 25:24
**start** [2] - 21:22, 23:13
**state** [5] - 11:8, 39:6, 39:10, 39:11, 39:16
**State** [1] - 44:2
**statement** [1] - 34:16
**statements** [2] - 31:18, 35:7
**STATES** [2] - 1:1, 1:3
**stating** [1] - 23:4
**statistics** [1] - 33:6
**statute** [3] - 3:22, 5:11, 34:3
**statutory** [5] - 8:9, 30:8, 33:4, 35:12, 42:7
**still** [4] - 4:22, 8:16, 10:16, 40:20
**stipulation** [3] - 9:12, 9:18, 10:7
**stressed** [1] - 36:22
**stretch** [1] - 20:14
**structure** [1] - 12:20
**student** [1] - 39:12
**subfolders** [3] - 17:3, 17:9, 21:5
**substance** [1] - 39:8
**substantiated** [1] - 36:18
**substitute** [1] - 33:9
**subtracts** [1] - 7:17
**successful** [1] - 33:7
**suffered** [1] - 26:21
**suffering** [1] - 36:15
**sufficient** [2] - 32:7, 37:19
**Sugar** [4] - 10:5, 15:4, 16:8, 16:11
**suggested** [1] - 8:16
**Suite** [1] - 1:12
**summarized** [1] - 29:13
**supervised** [16] - 3:23, 4:9, 8:10, 24:23, 25:3, 25:15, 27:22, 31:1, 31:20, 35:14,

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*Unpurchased complete copy of transcript*
Case 1:16-cr-00081-LRR-CJW Document 65-1 Filed 02/11/17 Page 51 of 52

36:19, 37:22, 37:25, 38:23,
39:4, 39:20
  **supervision** [6] - 30:23,
39:5, 39:22, 40:22, 41:7, 44:5
  **supervisory** [1] - 7:12
  **support** [1] - 28:1
  **Sweet** [4] - 10:5, 15:3, 16:8,
16:11
  **sworn** [1] - 11:3
  **system** [1] - 13:1

## T

  **table** [2] - 8:2, 8:7
  **tailored** [1] - 42:7
  **talk** [5] - 6:15, 24:25, 32:17,
34:1, 37:22
  **talked** [3] - 13:5, 29:3, 43:1
  **Task** [1] - 11:17
  **telephonically** [1] - 3:6
  **term** [5] - 3:23, 4:6, 37:22,
38:1, 38:23
  **terms** [4] - 4:7, 31:19, 32:2,
33:12, 36:7, 38:8
  **test** [1] - 30:24
  **testified** [1] - 11:4
  **Texas** [3] - 38:15, 38:17,
38:19
  **THE** [60] - 1:1, 1:1, 1:16, 3:2,
3:13, 3:18, 3:19, 4:17, 4:18,
4:21, 4:22, 4:24, 4:25, 5:18,
5:22, 6:3, 6:6, 6:7, 6:8, 6:9,
6:13, 6:14, 6:17, 6:18, 7:25,
8:22, 9:7, 9:9, 9:20, 9:23,
10:6, 10:16, 10:20, 10:23,
10:25, 11:5, 15:13, 16:18,
16:21, 21:1, 21:19, 21:20,
21:21, 22:4, 24:10, 24:25,
27:20, 30:13, 30:16, 30:21,
34:7, 34:18, 34:24, 38:18,
41:18, 42:9, 42:23, 42:25,
43:2, 43:3
  **thereto** [1] - 32:15
  **third** [4] - 7:24, 17:21, 17:22,
19:2
  **Third** [1] - 1:12
  **thirdly** [1] - 28:16
  **threatened** [1] - 29:23
  **threatening** [1] - 29:17
  **threats** [1] - 29:20
  **three** [8] - 9:1, 10:4, 16:14,
16:23, 22:18, 28:13, 28:23,
39:24
  **throughout** [2] - 20:13,
36:13
  **Title** [1] - 32:10
  **today** [5] - 4:19, 34:9, 42:21,
43:1
  **toddler** [1] - 7:7
  **toddlers** [1] - 29:8
  **took** [1] - 33:17

  **top** [1] - 8:6
  **total** [2] - 35:9, 38:23
  **touch** [1] - 34:10
  **towards** [2] - 29:18, 30:3
  **traded** [1] - 29:1
  **training** [3] - 11:13, 31:13,
37:8
  **trainings** [1] - 11:18
  **transcript** [1] - 44:5
  **Transcript** [3] - 1:6, 1:21,
1:21
  **transcription** [1] - 44:5
  **treatment** [6] - 26:18, 27:4,
31:14, 33:5, 33:7, 37:9
  **Tremmel** [9] - 3:9, 5:12,
7:20, 8:24, 22:5, 27:20, 30:23,
34:2, 34:9
  **TREMMEL** [23] - 1:10, 3:9,
5:14, 7:23, 9:1, 9:11, 9:24,
10:7, 10:19, 10:22, 10:24,
11:7, 15:12, 16:16, 20:24,
21:18, 22:6, 27:21, 34:6,
34:13, 41:16, 42:1, 42:22
  **trial** [1] - 33:20
  **true** [4] - 22:13, 22:14, 26:3,
44:5
  **truly** [1] - 26:10
  **trying** [1] - 37:16
  **turns** [2] - 20:15, 20:18,
35:20
  **two** [10] - 3:16, 17:20, 17:22,
19:3, 19:4, 23:23, 28:8, 29:6,
35:24, 38:9
  **two-and-a-half** [2] - 28:8,
35:24
  **type** [2] - 25:8, 26:5
  **typical** [2] - 32:19, 36:14

## U

  **U.S** [1] - 1:10
  **unacceptable** [1] - 30:17
  **under** [15] - 3:19, 3:21, 4:2,
5:11, 8:8, 9:6, 17:9, 22:10,
32:9, 32:24, 34:3, 35:2, 35:11,
35:14, 44:5
  **understood** [1] - 33:13
  **undisputed** [1] - 35:21
  **UNITED** [2] - 1:1, 1:3
  **United** [19] - 1:11, 1:23, 3:3,
3:5, 8:16, 8:23, 9:25, 32:5,
34:3, 35:2, 35:6, 40:6, 40:11,
41:2, 41:8, 41:11, 41:12,
42:16, 44:13
  **unless** [2] - 30:15, 41:22
  **unobjected** [1] - 36:3
  **unpaid** [1] - 41:5
  **unusual** [1] - 32:20
  **unwarranted** [2] - 37:11,
37:16
  **up** [6] - 3:22, 3:25, 4:12,

7:15, 20:16, 27:6
  **urinating** [1] - 20:20
  **US** [1] - 3:9
  **use** [4] - 30:19, 31:21, 36:22,
38:15
  **used** [2] - 35:25, 36:3
  **using** [5] - 1:20, 28:21,
31:24, 35:5, 36:21

## V

  **vagina** [1] - 20:17
  **vague** [2] - 22:10, 25:6
  **vagueness** [1] - 25:9
  **variance** [9] - 25:17, 28:3,
28:4, 30:12, 32:2, 32:11,
32:12, 32:13, 33:24
  **vary** [4] - 25:18, 27:18, 32:3,
32:12
  **versus** [2] - 3:3, 9:25
  **vibrator** [2] - 20:12, 20:19
  **victim** [25] - 9:14, 10:18,
18:25, 19:8, 19:20, 20:6,
21:10, 24:2, 24:4, 24:6, 26:24,
28:6, 28:17, 28:21, 28:23,
29:6, 30:3, 33:14, 34:9, 34:11,
34:16, 34:17, 35:18, 36:9,
40:13
  **victim's** [2] - 19:6, 19:13
  **victimization** [1] - 29:11
  **victimized** [1] - 36:9
  **victimizing** [1] - 33:15
  **victims** [6] - 5:7, 9:14, 10:4,
22:18, 34:7, 34:10
  **video** [16] - 13:15, 13:18,
17:23, 19:2, 19:9, 19:24,
19:25, 20:2, 20:8, 20:13,
20:19, 23:23, 23:24, 24:1,
24:3, 28:18
  **videos** [25] - 11:23, 12:1,
12:25, 14:9, 14:19, 15:6, 15:7,
16:11, 16:13, 16:23, 16:24,
17:6, 17:9, 17:11, 17:17,
18:15, 19:1, 19:5, 19:14,
20:22, 21:10, 21:13, 23:21,
24:4, 24:6
  **view** [1] - 25:12
  **viewed** [2] - 11:23, 12:1
  **violence** [1] - 7:7
  **vocational** [2] - 31:13, 37:8
  **VS** [1] - 1:5

## W

  **wait** [1] - 16:21
  **waived** [2] - 41:22, 42:11
  **waiver** [3] - 42:2, 42:7, 42:8
  **waiving** [1] - 42:3
  **Waldron** [2] - 18:13, 18:16
  **want** [8] - 5:5, 10:20, 21:23,

22:4, 30:15, 30:18, 33:13,
42:14
  **wanted** [3] - 6:15, 28:21,
29:24
  **warehouse** [1] - 14:4
  **warrant** [2] - 12:9, 12:12
  **watched** [1] - 19:25
  **weapon** [1] - 39:10
  **web/internet** [1] - 14:5
  **week** [2] - 9:15, 18:22
  **Western** [1] - 10:1
  **whereby** [1] - 41:22
  **WHEREOF** [1] - 44:10
  **white** [1] - 20:11
  **Wichita** [1] - 38:13
  **wide** [1] - 30:25
  **withdrew** [1] - 27:11
  **WITNESS** [3] - 2:2, 21:20,
44:10
  **witness** [2] - 10:22, 11:3
  **word** [1] - 17:8
  **work** [3] - 14:14, 18:18,
39:12
  **works** [1] - 14:5
  **written** [3] - 32:14, 32:15,
42:15

## Y

  **year** [3] - 28:8, 30:4, 35:24
  **year-and-a-half** [1] - 35:24
  **years** [28] - 3:22, 3:23, 3:24,
4:5, 4:6, 4:9, 4:10, 6:25, 8:10,
20:10, 23:7, 23:12, 25:23,
26:11, 26:15, 27:6, 27:8, 30:7,
35:13, 35:15, 35:24, 37:14,
37:24, 38:1, 38:24, 42:6
  **young** [2] - 29:3, 30:3